EARL KEITHLEY, RESPONDENT, v. STONE & WEBSTER ENGINEERING CORPORATION AND SOUTHERN SURETY COMPANY, APPELLANTS.— 49 S. W. (2d) 296.

Kansas City Court of Appeals. April 4, 1932.

*Norman & Norman* for respondent.

*Jones, Hocker, Sullivan & Gladney, Willard A. McCaleb* and *W. F. Drescher, Jr.,* for appellants.

BOYER, C:—This is an appeal from a judgment of the Miller county circuit court reversing an order of the Workmen's Compensa-

tion Commission which denied compensation for an injury received by respondent. Earl Keithley was an employee of Stone & Webster Engineering Corporation and the Southern Surety Company was the insurer of the employer. In the course of his employment Keithley was assaulted by a coemployee and as a result thereof the sight of his right eye was lost. A claim for compensation was duly filed against the employer and the insurer. There was no answer. The case was tried before a referee. Claimant appeared in person and the employer and insurer appeared by their representatives. The referee found in favor of the employer and insurer and against the employee and awarded no compensation. On application there was a review by the full commission. The final award was made by two members of the commission, the third member dissenting. It recites:

"The undersigned hereby find in favor of the above employer and insurer and against the above employee and award no compensation for the above accident for the reason that employee's condition is not the result of an accident arising out of and in the course of his employment within the meaning of section 7, Workmen's Compensation Act, Laws of 1927, in that, while it occurred during the course of his employment, it is not connected with or incidental to the risk of his employment."

There was no other statement of the findings of fact or rulings of law, as contemplated by section 41 of the Act, shown in the record. An appeal was duly made to the circuit court and the judgment there reversed the award of the commission and remanded the case with direction that the commission "hear evidence and make findings as to amount of claimant's disability." From this judgment the employer and insurer were granted an appeal to this court.

The substance of appellants' contention is that the judgment of the circuit court was wrong and the award of the commission was right because claimant did not sustain an injury by accident arising out of his employment, and that the commission, under the state of the evidence, was authorized to and did so find. Respondent insists that the facts are not in dispute and that upon the record of the evidence the occurrences resulting in claimant's injury were all incidental to and arose out of the employment, and as a matter of law he is entitled to compensation. There are other questions presented by counsel in briefs and arguments, but they are all collateral to the main inquiry above indicated.

From the position of the parties it becomes essential to state the testimony somewhat in detail. But before referring to the evidence which is said to be conflicting, it will be advantageous to state the conceded facts. Claimant, Clem Hancock, Cass Hancock, and others were employed by the Stone & Webster Engineering Corporation in construction work at Bagnell Dam. On the day in question, Keithley

and Clem Hancock were engaged in their work under separate foreman but near each other, and Cass Hancock was employed to carry water. Keithley's foreman was name Hartman. It appears this foreman had discharged a water boy that day, and at the noon hour and about the time the men were to return to work some discussion arose over it. Clem Hancock asked the foreman about it and the foreman said: "I am going to pink-slip him," meaning to give him his time or discharge him; and the foreman also said: "I'll give it to some more if I catch them sitting around." At this time Clem Hancock made a remark addressed to Keithley about sitting around so much, on account of which Keithley took offense. The men went to work near each other and in passing, or when near together, Keithley said to Clem Hancock that the next time that remark was made he would slap Hancock's mouth. Hancock said: "Right now is a good time to slap me." Keithley slapped him and the two men went together in a scuffle and were separated. Later on, Hancock renewed the altercation with Keithley and they were again separated and told not to fight. Shortly thereafter, Clem Hancock informed his brother, Cass Hancock, of the difficulty and in about ten or fifteen minutes after the first encounter, Cass Hancock approached Keithley who was then engaged with other men carrying a large piece of timber on their shoulders, and while so engaged Cass Hancock struck Keithley a blow in the eye. Keithley testified that he did not know of the presence of Cass Hancock at the time and that he was approached from the rear. Cass Hancock testified that he walked around in front of Keithley, cursed him, and then struck him. The injury from this blow to Keithley so hurt his eye that the sight thereof was almost entirely destroyed, and his other eye weakened in sympathy.

The only conflicts in the testimony pertain to the exact nature of the remark made by Clem Hancock to Keithley, and the position of Cass Hancock at the time of the last assault. Keithley testified that the foreman had discharged a water carrier for sitting down; that Clem Hancock asked him why he did it, and the foreman said "he fired him for sitting down;" that Hancock then said to Keithley: "Hear that, Shorty. You don't want to be sitting down." Clem Hancock testified: "I looked over to Shorty and said, "We'll have to quit sitting around so much.'" Keithley testified that Cass Hancock came up behind him and struck; that he was not aware of his presence. Cass Hancock testified: "As soon as the whistle blew I took the water bucket to get a bucket of water. When I came back Clem told me they got into it and the Woods boy took him off and I asked him what it was he told him. He hollered for me to come back. Made me mad and I went up there and set my water bucket down. He turned around to see who it was. I stood there

a few seconds. Said, 'Damn you,' and I hit him.'' He also said that at that time Keithley had a piece of lumber on his shoulder. Other testimony is to the effect that Keithley was assisting other men to carry a large piece of lumber.

Two other employees were called as witnesses on behalf of plaintiff. One of them, Clifford Wood, was directed by the referee to tell ''in a very few words'' what he knew about it. Witness said: ''Well, at noon, when we started to work right after the whistle blew, there was talking; that remark came up and we went on and carried this timber on there, and started to turn back to get another one, and I don't know what he said or nothing like that. I know they got into it. I heard him say he'd slap him, which he did slap him. They got around there and clinched. I separated them; told them they better not fight; I started on. They got into it again and then some other one separated them and we came on and got another timber and started back. We got about half way before we was carrying them. The water boy run up and hit him and swung with his left hand; had his water bucket in the right.'' Witness also said there were no words before the blow was struck; there had been no trouble before so far as he knew. ''Q. Did you hear this remark that was made about him if he didn't quit laying down on the job he'd get fired? A. Yes, sir.'' The men were working close together, but in different gangs; he heard Keithley say, ''I'll slap you,'' but didn't hear him say why; they had carried one timber before the fight started.

G. M. Pope testified: ''We was down there, setting down; started to work and Hancock said, 'Shorty, if you don't quit setting down;' —Hartman asked him—he asked him what made him fire the water boy. Said he was sitting down on the job. Said, 'Some more of you'll get fired if you don't quit setting down; fire them, too. You'll get it, too.'' ''Earl said next time he said that he'd slap him in the mouth. Hancock said now was a good time. Earl did.'' There was no feeling between the two gangs of which he was aware; he heard the remark made by Hancock to Keithley. The referee announced: ''There are several other witnesses. The claimant states that their story would be the same as the witnesses already preceding.'' No other witnesses were called for the claimant. The loss of the sight of an eye was conceded, and defendants called Clem Hancock and Cass Hancock.

Clem Hancock testified that the men were sitting around at the noon hour; a water boy had told him that he had been fired; Hartman, the foreman, was there. ''I asked Hartman if him and the water boy had fell out. Said, 'I'm going to pink-slip him.'' Said, 'I'll give it to some more if I catch them setting around.' I looked over to Shorty and said, 'We'll have to quit sitting around so much.'

He carried one timber. Said, 'I'm just going to slap you.' I said, 'Right now is a good time to slap me,' and he did." He had had no trouble with Keithley before; he had walked with him, played pool, and joked; there were no hard feelings between the men; he did not think Keithley was angry until he said, "I mean it;" he thought nothing more about it until he went back to work; he.told his brother that he and Keithley "got into it" and he saw his brother strike Keithley; he did not know whether anything was said; they had had no fight before; he, and his brother both quit work at the time.

Cass Hancock testified that he was twenty-three years of age; he had been employed on the work six or seven months; that he knew Keithley and there were no "hard feelings" between them; that he struck Keithley; Hartman fired one of the water boys. "Before the whistle blowed we was all sitting around there, talking. Hartman walked up. Clem asked him if he pink-slipped him—he and his water boy got into it. He said, 'Yes. Some more are going to get it if they don't quit sitting around.' Clem said to Keithley, 'You heard that.' " The remainder of his material testimony has been set out heretofore. That was all the evidence.

The positions of the parties on this appeal have been stated in general terms. Concretely and specifically the only question to be decided is whether the circuit court on review was authorized to reverse the award of the commission and remand the case on any of the grounds specified in section 44 of the Act (Laws of 1927), now section 3342, Revised Statutes 1929. Under this section the power of the reviewing court is limited by its terms and "the court on appeal shall review only questions of law and modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other: 1. That the commission acted without or in excess of its powers. 2. That the award was procured by fraud. 3. That the facts found by the commission do not support the award. 4. That there was not sufficient competent evidence in the record to warrant the making of the award." Reason for interference in the present case must be found, if at all, under the terms of the fourth condition. An award of the commission is regarded as a special verdict and if supported by substantial evidence it must prevail. But in the absence of such supporting proof it should be set aside.

It is agreed that the substance of the verdict as shown by the award is that the injury did not arise out of the employment. As noted heretofore, the commission made no findings of fact except to state its reason for denying compensation on the ground "that employee's condition is not the result of an accident arising out of and in the course of his employment within the meaning of section 7, Work-

men's Compensation Act, Laws of 1927, in that, while it occurred during the course of his employment, it is not connected with or incidental to the risk of his employment." If the reference to section 7 of the act was intentional, the commission was evidently in error because that is the definition section of the act, and paragraph (c) is the only pertinent part. It provides: "Without otherwise affecting either the meaning or interpretation of the abridged clause 'personal injuries arising out of and in the course of such employment,' it is hereby declared not to cover workmen except while engaged in, or about the premises where their duties are being performed, or where their services require their presence as a part of such services." If the commission had this provision in mind and in fact found that the employee was not engaged in his work or about the premises where his duties were being performed, or where his services required his presence, such a finding would be entirely without support of any evidence and contrary to all of it. From the record of the proof it must be accepted as uncontroverted that at the time of claimant's injury he was actually engaged in the performance of work assigned to him by the employer and at a place designated therefor. It is probable, however, that the reference to section 7 was an error and that the commission had in mind and intended to refer to section 3, Laws of 1927, now section 3301, Revised Statutes 1929, which provides that "the employer shall be liable irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of his employment."

Notwithstanding forms of expression, the commission arrived at the conclusion that claimant's injury was not compensable because it did not arise out of his employment. We are of the opinion that the result before the commission was wrong. Where the evidence is conflicting on the question of whether or not the injury arose out of the employment the situation presents an issue of fact for the determination of the commission. But where there is no material conflict in the evidence upon the issue the situation calls for a determination of the legal effect of the facts in evidence. It involves merely a question of law, and such is the condition of the record before us. We see no material conflict in the testimony, or in permissible inferences, which could reasonably lead to diverse conclusions. The essential facts are not controverted. Claimant was an employee; he was actually engaged in the performance of work for the employer, and was assaulted and injured by a coemployee while so engaged. This was an accident as defined in the law to be "an unexpected or unforeseen event happening suddenly and violently,

with or without human fault and producing at the time objective symptoms of an injury." [Section 3305, Revised Statutes 1929.]

Did the injury occasioned by the assault arise out of the employment? If the legal effect of the facts is such as to show that it did, then the finding and conclusion of the commission that it did not so arise and its award of no compensation were unauthorized for the lack of sufficient competent evidence in the record to warrant the making of the award.

We are of opinion and hold that under the facts and circumstances shown in evidence claimant's injury did arise out of his employment within the meaning of the law; that there is no substantial proof or permissible inference to the contrary, and that the commission was in error in holding otherwise. In reaching this conclusion we necessarily consider the origin of the assault committed upon the employee and the nature and character of the controversy inducing the assault. The controversy was connected with and pertained to the employment; there is no evidence of any other foundation for the quarrel. Prior to the time the participants were friendly; there had been no strife or feud and no animosity arising from matters or subjects wholly independent of the work and purely personal to the individuals. They were friends up to the moment that claimant considered that he had been offered an insult. This he resented and requested the offender not to repeat it. The remark made to claimant was evidently interpreted by him to mean that he was a shirk or slacker and was cheating his employer. Whether this interpretation was justified or not the offender knew that the employee resented his statement. The statement pertained to the employment and was connected with the work of the employer, and did not and could not have referred to any other matter. Clem Hancock instigated the quarrel and pressed it to the point where claimant slapped him; the parties were separated and Clem Hancock later renewed the fight. They were again separated and in a very short time, Cass Hancock was informed by his brother of what had occurred. This so offended the brother that he immediately sought out claimant and assaulted him. This assault resulted from the controversy begun a few minutes before over the intimation that claimant was unfaithful in his work. There is a complete chain of events, in unbroken sequence, from the origin of the quarrel about the work to the final assault upon the claimant. The direct and immediate cause of claimant's injury was the assault, but the origin of the assault was a quarrel or controversy growing out of the work of the employees and directly connected with and pertaining to the employment. Claimant's injury arose out of his employment. No other source can be found from the evidence. We think it within the legislative intent expressed in the compensation law to include

such cases of assault as the one at bar and to afford compensation for injury so received.

The parties agree that there is no "case in point" from the appellate courts of this State, and rely upon the rulings made in other jurisdictions. Appellants' counsel concede that compensation should not be denied merely because an injury results from an assault by one employee upon another, but insist the rule generally adhered to in such cases is that before compensation can be awarded it must be apparent to a rational mind, after consideration of all the facts in the case, that the assault was proximately caused by the work itself or was incidental to the work or to some duty which the injured employee owed to his employer; and that an injury is not compensable where it results from the personal relations between the employees and not from a prosecution of the work which they were required to do; or was occasioned by resentment, anger or hatred personal to the employee committing the assault, or grew out of personal ill-will or a desire for revenge. It is said that such is the uniform holding elsewhere and numerous authorities are cited. Typical ones are: Jacquemin v. Turner & Seymour Mfg. Co., 103 Atl. 115; City of Chicago v. Industrial Commission, 127 N. E. 49; Marion County Coal Co. v. Industrial Commission; Metropolitan Redwood Lumber Co. v. Industrial Accident Commission, 182 Pac. 315; Griffin v. Roberton & Son, 162 N. Y. Sup. 314; Edelweiss Gardens v. Industrial Commission, 125 N. E. 260.

Respondent cites a great array and a larger number of assault cases which tend to support his position that the injury in the instant case did arise out of the employment and is compensable. Typical of these are: Georgia Casualty Co. v. McClure (Tex.), 239 S. W. 644, 647; Steel Co. v. Flannery, 163 N. E. 841; Ferguson v. Cady-McFarland Gravel Co., 101 So. 248; Meucci v. Gallatin Coal Co., 123 Atl. 766; Fust Kerber Cut Stone Co. v. Mayo, 144 N. E. 857; Globe Indemnity Co. v. Industrial Accident Commission, 225 Pac. 273; Carbone v. Loft, 114 N. E. 1062; Verschleiser v. Joseph Stern & Son, 229 N. Y. 122, 128 N. E. 126; Stasmas v. State Industrial Commission, 80 Okla. 221, 195 Pac. 762; Pekin Cooperage Co. v. Industrial Commission, 285 Ill. 31, 120 N. E. 530.

The foregoing citations and many others have been industriously collected and reviewed by contending counsel. It would be impracticable to set forth here the controlling facts and the pertinent parts of the compensation acts which are considered in the various cases. It is sufficient to say that the authorities are not uniform in the rulings made on questions similar to the one in hand. But we believe the weight of authority supports the respondent in his contention that the injury in this case arose out of the employment. A

presentation of the subject is made in Schneider on Workmen's Compensation Law, Second Edition, section 293, accompanied by an extended digest of decisions showing where compensation was allowed and where it was not allowed in assault cases. It is apparent that the rule generally applied is that where a controversy leading to an assault is connected with or pertains to the employment or is incidental to the work of the employee, the resulting injury arises out of the employment.

The process of search and comparison has led us to the conclusion heretofore announced. Further, we take notice of the injunction of our own Supreme Court that every case involving the application of the term ''arising out of his employment'' should be decided upon its own particular facts and circumstances and not by reference to some formula. [Leilich v. Chrevolet Motor Co., 40 S. W. (2d) 601, 605.] And furthermore, we have authority for the holding that where there is a doubt as to the right of compensatiton that doubt should be resolved in favor of the employee. [Pruitt v. Harker, 43 S. W. (2d) 769, 773; Shout v. Gunite Concrete & Construction Co., 41 S. W. (2d) 629, 631.]

Other recent cases evidence a broad and liberal construction of the compensation law and that injuries will be regarded as within the scope of its intendment and as arising out of the employment unless said injuries are expressly excluded by the terms of the statute or removed from its operation by the evidence in the case. [Conklin v. K. C. Public Service Co., 41 S. W. (2d) 609; Schulte v. Grand Union Tea & Coffee Co., 43 S. W. (2d) 833; Ransdell v. International Shoe Co., 44 S. W. (2d) 1; Sawtell v. Stern Bros. & Co., 44 S. W. (2d) 264.]

The decision at which we have arrived is supported in principle by the ruling of the St. Louis Court of Appeals in the case of Hager v. Pulitzer Pub. Co., 17 S. W. (2d) 578, 580, in so far as compensation was allowed. The question of augmented injury by the voluntary act of an employee, previously injured, is not presented in the case at bar. It results that the judgment of the circuit court should be affirmed. The Commissioner so recommends. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of BOYER, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.