**F. E. GRAUWILLER TRANSP. CO., Inc., v. GALLAGHER BROS. SAND & GRAVEL CORPORATION et al.**

**THE J. G. NO. 48.**

**THE HENRY HENJES et al.**

**No. 185.**

Circuit Court of Appeals, Second Circuit.

Feb. 4, 1946.

Edmund F. Lamb, of New York City (Purdy & Lamb and Thomas J. Irving, all of New York City, on the brief), for claimants-impleaded-appellants.

Christopher E. Heckman, of New York City (Foley & Martin, of New York City, on the brief), for libellant-appellee.

Leo F. Hanan, of New York City (Macklin, Brown, Lenahan & Speer, of New York City, on the brief), for respondents-impleaded-appellees.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

■ At the time of its stranding here involved in October, 1943, the scow J. G. No. 48 was under charter to Gallagher Brothers Sand & Gravel Corporation, which was employed by North Shore Sand & Gravel Corporation to deliver a cargo of sand and gravel to Elmhurst Contracting Company at the latter's place of construction of a pier extending into Sandy Hook Bay at Leonardo, New Jersey. It was being towed by the tug Henry Henjes. The District Court after a trial wrote a reasoned opinion, The J. G. No. 48, D.C.E.D.N.Y., 58 F.Supp. 773, and made findings of fact and conclusions of law holding the stranding of the scow and resulting damage to it to have been caused by the negligent navigation of the tug. Since this seems to us a question of fact where the findings below, being far from "clearly erroneous," should stand, Petterson Lighterage & Towing Corp. v. New York Cent. R. Co., 2 Cir., 126 F.2d 992, we shall rely on the statement in that opinion and only discuss the facts briefly.

■ The evidence supports Judge Galston's conclusion that the negligent towing of the tug caused the scow to strike a concrete mooring block. This was the explanation given by Sarin, the scowman, in his written statement made the day after the accident. At the trial, he further testified that the scow went over the mooring line, "jumped up" three or four feet, and—water pouring into its stern—listed to starboard before settling. And the master of the Henry Henjes, the captain of a disinterested scow, and a surveyor who examined the injured boat gave testimony which corroborated Sarin's account. Granting that the scow struck a mooring block, there can be no real question but that it was due to the negligence of the tug. For the position of the buoys was indicated by crossed timbers and by mooring lines; and the Henry Henjes, constantly working in the area, must be presumed to have been familiar with their location. It seeks to reduce its liability on the theory that the storm which followed the sinking was an intervening cause, and that the additional injury it caused was attributable either to an Act of God or to Elmhurst's failure immediately to unload the scow. But the storm was a reasonably foreseeable event; and the evidence is clear that Elmhurst did all it could to unload under adverse weather conditions.

■ Elmhurst's assignment of error to that part of the decree holding it secondarily liable is also overruled. Its letter to North Shore stated broadly that it accepted "the full responsibility of the barges containing material" furnished on North Shore's contract; and under the circumstances, the District Court was correct in construing it as intended also to protect North Shore's contractee, Gallagher, to whom it was immediately and naturally shown.

Judgment affirmed.