THE GEORGE VICKERS.

KABLE v. UNITED STATES.

No. 135–147.

District Court, S. D. New York.

July 15, 1947.

Decree Affirmed July 31, 1948.

516

See also 77 F.Supp. 519.

Thomas A. McDonald, of New York City (James S. Tobin, of New York City, of counsel), for libelant.

John F. X. McGohey, U. S. Atty., of New York City (Haight, Griffin, Deming &' Gardner, Edgar R. Kraetzer and James M. Estabrook, all of New York City, of counsel), for respondent.

COXE, District Judge.

This is a suit by the libelant, Paul E. Kable, chief officer of the S.S. George Vickers, against the respondent, United States of America, owner and operator of the vessel, for damages for personal injuries alleged to have been sustained as a result of an assault committed upon the libelant by one Erik Svedman, chief engineer on September 19, 1943, while the vessel was lying at the Port of Alexandria, Egypt. Claims are also asserted for maintenance and cure, for unpaid wages, and for damages for failure to pay wages.

The ground of liability alleged in the libel is that Svedman, the chief engineer, was "of a vicious, pugnacious and dangerous disposition" to the knowledge of the respondent. There is, however, no evidence that Svedman was of a vicious, pugnacious or dangerous disposition, and the case seems, therefore, to fall back on the broad contention of the libelant that the alleged assault constituted "negligence" for which the respondent is liable under the Jones Act, 46 U.S.C.A. § 688.

The facts regarding the "assault" are in dispute, and it will be helpful at the outset to review the testimony of the different witnesses bearing on the subject. The libelant's version of the occurrence was given by the libelant and Nilson, the second mate; the respondent's version, by Tregler, the second assistant engineer, and Svedman the chief engineer.

Kable testified that on the afternoon of Saturday, September 19, 1943, he left the vessel on shore leave and went to a cafe in Alexandria, where he was joined between 6:00 and 7:00 p. m. by Svedman, the chief engineer, and Tregler, the second assistant engineer. While at the cafe the men had some drinks, and Svedman borrowed 5 Pounds of Kable; later all three men left and went to another place in Alexandria for further drinking. At some time after 10:00 o'clock Kable and Tregler returned to the vessel together, and upon arrival Kable went to his room and, preliminary to an inspection of the vessel, put his service revolver in his pocket. He admitted that in making the rounds it was not customary for him to carry a gun. On completion of the inspection Kable came back to his room, and about midnight heard talking in the chief engineer's quarters. He thereupon went to the chief engineer's office room, and, standing in the alleyway outside, saw in the room two "South American soldiers" and asked in strong language how they were permitted to come aboard the ship. His description of what followed was that

Svedman "came flying out of his office" and "walked right into me and knocked me off my feet"; and further, that when he regained his feet Svedman came at him again, and he "hit him over the right shoulder" and was himself "cracked over the head". He then went to his room, and some time later Svedman came there, kicked him in the belly and knocked him down. All the rest was a blank until he woke up in the hospital. Kable explained his action in challenging the presence of visitors in Svedman's room by saying that the British Port authorities had given strict orders forbidding outsiders on the vessel unless they had special passes. And he admitted that he had never previously had any difficulty with Svedman.

Nilson's testimony begins with what appears to be a continuation of the original fight. He said that at about 2:00 o'clock in the morning he heard a commotion in the alleyway, went out, and found Kable and Svedman fighting. Kable was at the time on his back and Svedman was down on his knees hitting Kable. He separated the men. The first assistant engineer took Svedman to his room, and Nilson took Kable to Kable's room. Nilson said that in separating the men he got blood all over himself from a bad cut over Svedman's eye. He had no sooner gotten to his room and started to wash up when he heard a further commotion, went out, and found the two men fighting again, in about the same place as before. He again separated them, sent for the Shore Patrol, and notified the Captain. Kable was soon afterwards taken off the ship in an ambulance.

Tregler testified that he is presently employed by Lykes Brothers Steamship Company as chief engineer of the S.S. Robert Neighbors. He said that he and Svedman went ashore together at about 7:00 p. m. on September 19th, and were joined by Kable at about 9:00 p. m. at a cafe in Alexandria. Later the three men proceeded to the Carlton Hotel, where the party was enlarged by the addition of American aviators, soldiers, and British Naval officers. The party broke up at about 11:00 p. m. and Tregler and Kable went back to the ship, arriving there at about 11:30 p. m. After reaching the ship Kable called Tregler into his room and told him that "he would fix the chief when he got back"; he then pulled his revolver out of the drawer in his desk. Tregler calmed Kable down, took the revolver away from him, threw it back into the drawer, and left for his own room. Later, on Svedman's invitation, Tregler joined Svedman and two British Naval officers in Svedman's office room. Soon afterwards Kable came shouting and yelling to the door of Svedman's office, and demanded to know who let the visitors aboard. Svedman was at the time changing his clothes in the adjoining bedroom, and came out and approached the door where Kable was standing, shouting "They are my friends, and I brought them aboard". Kable thereupon struck Svedman three or four quick blows on the head with his revolver, and with the first blow Svedman started to go down and fell into the alleyway. Tregler wrenched the gun from Kable's hand, and on later inspection found it fully loaded. He helped to take Svedman to his room, and then attended to dressing Svedman's head, which was covered with blood and had "a couple of deep scalp wounds". After he had dressed Svedman's head and had returned to his room, he heard a further commotion and when he came out he found that the fight had been renewed, and saw the second mate helping Svedman to his room. Tregler said that while the men were outside the Carlton Hotel, just after leaving there, Kable and Svedman were arguing and both were "saying mean things".

Svedman testified that he went ashore with Tregler between 5:30 and 6:00 p. m. on September 19th, and after doing some shopping the two men proceeded to a cafe, where they had some drinks and were joined by Kable. From there the three men went to the Carlton Hotel, where the drinking continued, and Kable loaned Svedman the equivalent of $15 in British Pounds. The party broke up shortly after 11:00 p. m., and there was a slight argument in the street outside the hotel between Kable and Svedman, after which the men separated, Kable and Tregler going off together and Svedman by himself. Svedman

518

proceeded towards the dock, and on his way encountered two British Naval officers whom he brought on board the vessel and took to his office. He then went below, got two cups of coffee, and after inviting Tregler to join the group, was in his bedroom hanging up his coat when he heard Kable inquiring loudly and roughly about the presence of the visitors. He thereupon came out of his bedroom and approached the doorway to his office room leading to the alleyway where Kable was standing, telling Kable that the visitors were friends of his and that he had brought them aboard. When Svedman reached the doorway Kable struck him "twice on the head and once on the side of the face with a gun" and knocked him unconscious. Svedman said that he at no time struck Kable. When he came to he was taken to his room, where his head was washed off and iodine was applied. He remained in his room about an hour, when he again heard Kable yelling in the alleyway that he "wanted his gun back and had ways and means of getting it". Svedman then went after Kable, and the fighting started in Kable's doorway and ended in his room. In the fighting Kable was badly pummeled. The fight was stopped by Nilson, the second officer, and Svedman was taken to his room, where he remained until the next morning. He then was brought to a naval dispensary at Alexandria, where his head was bandaged and three stitches were taken in one of the cuts.

■ I am satisfied from a careful reading of the record that the version of the entire occurrence as given by Tregler and Svedman is substantially correct, and it definitely places Kable as the aggressor in the first and principal encounter. I accept Kable's testimony that the Port authorities at Alexandria had forbidden outsiders to board the vessel unless they had special passes. But surely this did not give Kable any justification for his sudden and vicious attack on Svedman. The whole incident seems to have stemmed from Kable's resentment against Svedman for something said during the arguments between the two men while on shore earlier in the evening. In any event, it appears from Tregler's testimony regarding his talk with Kable

just after they returned to the vessel that Kable was at that time in a menacing mood towards Svedman. The second encounter occurred an hour or so after the first, and was a continuation of the first. In this second encounter Svedman attacked and beat Kable, but, clearly, anything done by Svedman at that time was not in the course of his employment or in furtherance of the respondent's business.

■ First.—The contention of the libelant that Svedman, the chief engineer, was of a vicious, pugnacious and dangerous disposition, has already been disposed of, and needs little further comment. The record is completely barren of evidence that Svedman had any such disposition, and I accordingly find that he was not at any time, either before or after the commencement of the voyage, a person of a vicious, pugnacious or dangerous disposition. With this finding it is obvious that such cases as Koehler v. Presque-Isle Transp. Co., 2 Cir., 141 F.2d 490, and The Rolph, 9 Cir., 299 F. 52, certiorari denied 266 U.S. 614, 45 S.Ct. 96, 69 L.Ed. 468, have no application.

■ Second.—The further contention of the libelant that the attack by Svedman, the chief engineer, in the second encounter, constituted negligence under Jamison v. Encarnacion, 281 U.S. 635, 50 S.Ct. 440, 74 L.Ed. 1082, and Alpha S. S. Corporation v. Cain, 281 U.S. 642, 50 S.Ct. 443, 74 L.Ed. 1086, is completely answered by Brailas v. Shepard S. S. Co., 2 Cir., 152 F.2d 849. In that case the first assistant engineer, in the course of an argument, stabbed the chief engineer, and the chief engineer sought to hold the ship owner liable for negligence. In affirming a jury verdict in favor of the defendant, the Circuit Court of Appeals stated as follows, 152 F.2d at page 850: "An assistant engineer can hardly be said to act in furtherance of his master's business when he assaults the chief engineer as the latter attempts to take control at a time of emergency. The case on its facts is clearly distinguishable from cases relied on by the plaintiff where a superior officer injured a seaman in the act of prodding him to work. Jamison v. Encarnacion, 281 U.S. 635, 50 S.Ct. 440, 74 L.Ed. 1082; Alpha

S. S. Corporation v. Cain, 281 U.S. 642, 50 S.Ct. 443, 74 L.Ed. 1086; Nelson v. American-West African Line, 2 Cir., 86 F.2d 730, certiorari denied American-West African Line v. Nelson, 300 U.S. 665, 57 S.Ct. 509, 81 L.Ed. 873."

In the present case, the most that can be said for the libelant's contention is that the chief engineer attacked the libelant in the second encounter in retaliation for the libelant's prior assault upon the chief engineer in attempting to enforce the Port regulation. Clearly, this attack of the chief engineer was not "in furtherance of his master's business," for which the respondent is liable in damages.

Third.—The claims of the libelant for maintenance and cure, for unpaid wages, and for damages for failure to pay wages, are more troublesome, and will be reserved for further consideration after submission by counsel of supplemental briefs limited to those claims. All that is now determined is that the libelant is not entitled to recover damages for personal injuries resulting from the alleged assault, and the making of separate findings and the entry of a decree will necessarily have to be deferred until the remaining claims are disposed of.