## KABLE v. UNITED STATES.
### No. 282, Docket 21007.

Circuit Court of Appeals, Second Circuit.

July 31, 1948.

CLARK, Circuit Judge, dissenting in part.

Thomas A. McDonald, of New York City (James S. Tobin, of New York City, on the brief), for libelant-appellant.

James M. Estabrook, of New York City (John F. X. McGohey, U. S. Atty., Haight,

Griffin, Deming & Gardner, and Edgar R. Kraetzer, all of New York City, on the brief), for respondent-appellee.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

█ Libelant, chief officer of the S. S. George Vickers, owned and operated by the United States of America, here appeals from a district court decree denying him any recovery of either damages for personal injuries or maintenance and cure, unpaid wages, and damages for failure to pay wages claimed as a result of an assault upon him by Erik Svedman, chief engineer of the vessel. The facts show a serious and prolonged altercation between the two officers in the early morning of September 19, 1943, while the vessel was lying at the Port of Alexandria, Egypt. Inevitably the participants are widely apart in their reports as to the cause and course of the combat, and the district judge has held the story told by Svedman, with some support from Tregler, the second assistant engineer, more believable than the one told by libelant. Obviously such resolution of disputed testimony cannot be said to be clearly erroneous; and consequently, under repeated decisions of this court, the court's findings of fact must stand. Farrell v. United States, 2 Cir., 167 F.2d 781; Ozanic v. United States, 2 Cir., 165 F.2d 738; The Paul Dana v. Socony Vacuum Oil Co., 2 Cir., 165 F.2d 78; The C. W. Crane, 2 Cir., 155 F.2d 940; F. E. Grauwiller Transp. Co. v. Gallagher Bros. Sand & Gravel Corporation, 2 Cir., 153 F. 2d 384; Balfour, Guthrie & Co. v. American-West African Line, 2 Cir., 136 F.2d 320, certiorari denied Balfour, Guthrie & Co. v. The Zarembo, 320 U.S. 804, 64 S.Ct. 437, 88 L.Ed. 486; Petterson Lighterage & Towing Corporation v. New York Cent. R. Co., 2 Cir., 126 F.2d 992.

Thus it appears that on Saturday evening, September 18, 1943, Kable, Svedman, and Tregler were ashore in Alexandria and had several drinks together. During the course of the evening, Svedman borrowed five pounds from Kable. At about 11:00 p. m. the party broke up following a slight argument between Kable and Svedman. The men then separated, Svedman going his own way, and the other two returning to the ship. Once aboard, Kable called Tregler into his room and told him that "he would fix the chief when he got back," and thereupon pulled his revolver out of the drawer of his desk. Tregler calmed him down, took the revolver away from him, put it back in the drawer, and then left his room. In the meantime Svedman, returning to the ship, encountered two British naval officers whom he brought aboard and took to his office. He then went below to get coffee, after having invited Tregler to join the group. While hanging up his coat in his bedroom, he heard Kable loudly and roughly inquiring about the presence of the visitors. Svedman then came out of his bedroom, approached the doorway to his office room leading to the alleyway where Kable was standing, and told him that the British officers were his friends and that he had brought them aboard. On reaching the doorway, Kable struck him "twice on the head and once on the side of the face with a gun" and knocked him unconscious. At no time had Svedman struck Kable. Tregler, who was present at the time, intervened and wrenched the gun from Kable's hand. On later inspection he found it fully loaded. He helped to take Svedman to his room, washed the blood off his head and applied iodine, and, after making him comfortable, returned to his own room.

Svedman remained in his room an hour or so, when he again heard Kable yelling in the alleyway that he "wanted his gun back and had ways and means of getting it." (Svedman's actual testimony was that he heard these calls made two or three times over an interval of five minutes, while he was in his room, three rooms removed from Kable's.) On hearing this, Svedman went after Kable, and the fighting started in Kable's doorway and ended in his room. During the course of the fight Kable was badly pummeled and received the injuries for which he sues. The court also found that the Port authorities at Alexandria had forbidden outsiders to board the vessel unless they had special passes. It also quotes, and apparently accepts, the testimony of Nilson, the second mate, that this second encounter consisted of two stages, wherein

Nilson first separated Svedman from Kable, directed him back to his room, and then went back to his own room to wash up when "whang, they were loose again" at Kable's door.[1] On this case the court first held in a reasoned opinion that the "attack of the chief engineer was not 'in furtherance of his master's business,' for which the respondent is liable in damages," and then deferred for further consideration the "more troublesome" issues involving the other claims and the "making of separate findings" and entry of a decree. D.C.S.D. N.Y., 77 F.Supp. 515, at 519. Thereafter it decided that, since it had already held the libelant the original aggressor, "i. e., that he was guilty of wilful misconduct, this disposes of the claim for maintenance and cure," and with it fell also the wage claims. D.C.S.D.N.Y., 77 F.Supp. 519, at 520. Accordingly, without filing "separate findings" beyond its original opinion, the court entered the decree from which libelant has appealed.

 On the facts as found we find no error in the district court's disposition of the claim for personal injuries. Since it found that Svedman was not a person of vicious, pugnacious, or dangerous disposition, there can be no liability for unseaworthiness. Indeed, the record is barren of any evidence showing that Svedman had such vicious propensities. Consequently Koehler v. Presque-Isle Transp. Co., 2 Cir., 141 F.2d 490, certiorari denied Presque-Isle Transp. Co. v. Koehler, 322 U.S. 764, 64 S.Ct. 1288, 88 L.Ed 1591, and The Rolph, 9 Cir., 299 F. 52, certiorari denied Rolph Navigation & Coal Co. v. Kohilas, 266 U.S. 614, 45 S.Ct. 96, 69 L.Ed. 468, relied on by libelant, have no application here. For in those cases the evidence convincingly established that the person committing the assault for which the shipowner was ultimately held liable had known vicious propensities. Quite the contrary is the situation before us.

 Libelant further contends that the attack by Svedman in the second encoun-ter constituted negligence under Nelson v. American-West African Line, 2 Cir., 86 F.2d 730, certiorari denied American-West African Line v. Nelson, 300 U.S. 665, 57 S.Ct. 509, 81 L.Ed. 873; Alpha S. S. Corporation v. Cain, 281 U.S. 642, 50 S.Ct. 443, 74 L.Ed. 1086; and Jamison v. Encarnacion, 281 U.S. 635, 50 S.Ct. 440, 74 L.Ed. 1082. These cases have no application here, for in each the assault was committed by a superior officer on an immediate inferior. Moreover, the assaults there involved were directly related to the doing of the ship's work and, in fact, were attempts to hasten such work. See Brailas v. Shepard S. S. Co., 2 Cir., 152 F.2d 849, certiorari denied 327 U.S. 807, 66 S.Ct. 970, 90 L.Ed. 1032. Naturally enough, libelant attempts to show that Svedman assaulted him in carrying out the ship's business. In support of this he points to a few sentences from Svedman's testimony, where, in response to questions so phrased, the latter acknowledged that he had gone to Kable's room "to silence him; to stop him from yelling"; and "to preserve quiet aboard the ship." Libelant's argument may be briefly disposed of by noting that, since the court found Svedman had gone to libelant's cabin on an excursion of revenge to retaliate for the prior assault made upon him and since it found that Svedman's actions were not in the course of his employment or in furtherance of the ship's business, we must, of course, abide by these findings supported as they are by the evidence. Accordingly we need not consider whether libelant could prevail even if Svedman's acts were as claimed. As we have seen, the only cases holding the shipowner liable for negligence in assaults of this kind involved incidents where a superior officer assaulted an inferior in the prosecution of the ship's work. Indeed, there is some authority that the principle does not apply where the person committing the assault had no authority over the one injured. Lykes Bros. S. S. Co. v. Grubaugh, 5 Cir., 128 F.2d 387, modified 130 F.2d 25; Nowery v. Smith, D.C.E.D.Pa., 69 F.Supp. 755, affirmed 3 Cir., 161 F.2d

---

[1] Nilson also testified that it was the third mate's watch, but that, when he sent the latter to notify the captain after the first stage of the second encounter, the captain said, "To hell with them. It is their fight."

732.[2] So we affirm the holding below dismissing the claim for the personal injuries sustained by libelant.

■■■ The claims for wages and maintenance and cure, however, present more troublesome issues. It is settled that a seaman cannot recover for maintenance and cure if the injury was the result of his own wilful misconduct. Aguilar v. Standard Oil Co. of New Jersey, 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107; Barlow v. Pan Atlantic S. S. Corporation, 2 Cir., 101 F.2d 697; The Berwindglen, 1 Cir., 88 F.2d 125; Lortie v. American-Hawaiian S. S. Co., 9 Cir., 78 F.2d 819. It is true that the court below found that Kable had initially started the fight with Svedman. Yet there is no finding as to whether this wilful misconduct precipitated Svedman's assault on him. Admittedly the second encounter was a continuance of the first in the sense that any act of retaliation may be said to be a continuance of the initial producing cause. But this does not inevitably mean that the second assault is so directly a product of Kable's wilful misconduct as to deprive him of maintenance and cure. It should be noted that the second assault occurred "an hour or so" after the first. Thus Svedman admits that he dozed off during this interval. Kable's attack on Svedman cannot in itself be considered the wilful misconduct that caused Svedman's later assault on him. In order to establish wilful misconduct of a kind that would bar libelant's recovery, it must appear that his later acts were the precipitating cause for Svedman's attack. Here we are unable to determine whether relief was denied Kable because he initially started the fight or because of the threatening language used just before the final assault. Thus we do not know whether the court considered the threatening language to constitute such misconduct in the light of the situation as it had then developed or even whether the threats were wilfully made. Apparently the court departed from its original plan of making separate findings. Since such findings are needed for an intelligent review of the court's action in dismissing this series of claims, it is the view of a majority of the court that the case should be remanded for findings on these issues and this will be the decision of this court.

The writer of this opinion is constrained to hold this remand too broad, believing that under the circumstances disclosed an award should not be denied this seaman and the remand should be only for the purpose of fixing the amount. The cases previously cited holding wilful misconduct a bar to maintenance and cure refer to the "tradional instances" of venereal disease and injuries received as a result of intoxication, "though on occasion the latter has been qualified in recognition of a classic predisposition of sailors ashore." Aguilar v. Standard Oil Co. of New Jersey, supra, 318 U.S. 724, 731, 63 S.Ct. 930, 934, 87 L.Ed. 1107. They have not barred fighting among seamen as such; and the conditions of work, including the close confinement so persuasively stressed by Justice Rutledge in the Aguilar case, would seem inevitably to lead to human friction, brawling, and resulting injuries requiring attention and care. To say that a fighting seaman has barred himself indefinitely from receiving wages or even maintenance and cure from his employer is to apply a pretty severe standard to a feckless class of workers for whom admiralty usually shows more solicitude. It is, it seems, a harsher standard than that set forth in the Aguilar case, where the ship's responsibility for maintenance and cure was said to be a broader liability—going beyond injuries sustained because of, or while engaged in, activities required by his employment—than that imposed by modern workmen's compensation acts. 318 U.S. at page 732, 63 S.Ct. 930, 87 L.Ed. 1107, criticizing Meyer v. Dollar S. S. Line, 9 Cir., 49 F.2d 1002, and Brock v. Standard Oil Co. of New Jersey, D.C. E.D.Pa., 33 F.Supp. 353. Yet under those acts recovery is increasingly allowed for injuries sustained as a result of fighting without making too fine a point as to who was the aggressor. See the leading case,

---

[2] Svedman testified that, while the chief officer was second in command to the master, yet the chief engineer and officer were of equal rank when the master was aboard.

94

also by Justice Rutledge before going to the Supreme Court, Hartford Accident & Indemnity Co. v. Cardillo, 72 App.D.C. 52, 112 F.2d 11, certiorari denied 310 U.S. 649, 60 S.Ct. 1100, 84 L.Ed. 1415, or the persuasive decision in Newell v. Moreau, 94 N.H. 439, 55 A.2d 476, allowing compensation to the aggressor; also cases such as Chanin v. Western Union Tel. Co., 271 App.Div. 763, 64 N.Y.S.2d 670; Corbett v. Biewener, 270 App.Div. 782, 59 N.Y.S.2d 359, and the comprehensive discussion in Horovitz, Assault and Horseplay under Workmen's Compensation Laws, 41 Ill.L.Rev. 311.[3] If an even more lenient rule is to be here applied, it would seem that, notwithstanding the unjustifiable character of Kable's previous attack, the substantial cooling off period made this a new assault of revenge by Svedman and that the vague and intermittent calls by Kable for his gun could not be considered an adequate cause for so harsh a consequence. True, respondent's master seems to have thought both men to have placed themselves beyond the pale and to have become each fair game for the other. The breakdown in ship's discipline here apparent is a natural, if not inevitable, consequence of such a view. But I would find a clear difference between the claims for personal injuries and the remaining claims. The shipowner should not be liable for the personal injuries caused by the engineer's assault; it should still remain liable for the maintenance and cure and the wages of the seaman injured on shipboard.

The judgment of this court is therefore that the decree appealed from be affirmed as far as it dismisses the claim for damages for personal injuries, but that it be reversed so far as it dismisses the claims for maintenance and cure, unpaid wages, and damages for unpaid wages, and that the case be remanded for the entry of findings upon these latter issues, particularly upon the issue of wilful misconduct, and for the entry of an appropriate decree in the light of the findings as made.

[3] For other cases allowing workmen's compensation for injuries resulting from a fight, see Southern Pac. Co. v. Sheppeard, 5 Cir., 112 F.2d 147; Penker Const. Co. v. Cardillo, 73 App.D.C. 168, 118 F.2d 14; Field v. Charmette Knitted Fabric Co., 245 N.Y. 139, 156 N.E. 642; Verschleiser v. Joseph Stern & Son, 229 N.Y. 192, 128 N.E. 126; Anderson v. Hotel Cataract, S.D., 17 N.W.2d 913; Hegler v. Cannon Mills, 224 N.C. 669, 31 S.E.2d 918; Keithley v. Stone & Webster Engineering Corp., 226 Mo.App. 1122, 49 S.W.2d 296; Industrial Commission of Ohio v. Pora, 100 Ohio St. 218, 125 N.E. 662; Pacific Employers Ins. Co. v. Industrial Acc. Com'n, 26 Cal.2d 286, 158 P.2d 9, 159 A.L.R. 313; York v. City of Hazard, Ky., 301 Ky. 306, 191 S.W.2d 239; Kaiser v. Reardon, 355 Mo. 157, 195 S.W.2d 477.