### FINNIGAN v. UNITED STATES.

No. A–17598.

United States District Court
E. D. New York.

May 3, 1949.

George J. Engelman, of New York City (Stanley P. Danzig, of New York City, of counsel), for libellant.

J. Vincent Keogh, U. S. Atty., of Brooklyn, N. Y. (Kirlin, Campbell, Hickox & Keating, Joseph M. Cunningham, and Vernon S. Jones, all of New York City, of counsel), for respondent.

BYERS, District Judge.

Decision of this cause has been delayed through the failure to receive respondent's brief until April 27, 1949, probably due to a misunderstanding.

The libel alleges causes in negligence and for maintenance and cure on behalf of Patrick Finnigan, an oiler on the S. S. GEORGE M. BIBB, based upon what he says took place on March 26, 1945, while the ship was lying at a pier of the Todd Shipyard in Hoboken, N. J.

In brief the assertion is that, as he was about to go ashore for recreation, he tripped over a cable lying on the deck, port side, near the No. 4 hatch, at about 5 P.M. on that day, and fell to the deck as the result of an injury so occasioned to his right ankle, thus acquiring these alleged causes.

The libellant was his only witness, and both he and his narrative were unconvincing; also he admitted on the stand that he had deliberately given false answers to interrogatories respecting the names of witnesses because "you don't have to give people information that may injure you eventually". By this he meant that, because some of them were still in the employ of the company, the latter "could get to them, they could hurt me".

Concededly the circumstances were that libellant and four other members of the crew foregathered about 5:15 P.M. at a saloon near the pier, and had a few drinks; then they entered his car and he drove to New York, with the probable intention of continuing on to the home of one of them in Brooklyn. Apparently frequent consultations ensued in about five New York barrooms; as the night wore on, the original objective was abandoned in favor of still another like establishment back in Newark, whence departure for the ship was had a little after midnight. This objective was attained about 1:00 A.M. on March 27th.

Two of the members of the party (in spite of Finnigan's effort to conceal their identities) testified, and their narratives (in deposition form) are expectably lacking in persuasive detail, but they are sufficiently circumstantial to cast such doubt, about the condition of libellant's ankle at the outset of their excursion, as to convince me that his ankle was not then injured because he fell on the deck of the ship as the result of tripping over one or more cables disposed thereon, or otherwise. The matters related in the Adams' deposition are thought to involve the actual events.

The libellant had signed on this ship on January 3, 1945, and apparently she had completed one voyage; she was taken to the Todd Shipyard on March 24th (a Saturday) and he had been ashore from that afternoon until the following Monday morning, the 26th (the day of these happenings), so he was not at 5:00 P.M. in need of the relaxation that might otherwise have been appropriate at the end of a long voyage to "distant and unfamiliar ports." Aguilar v. Standard Oil Co., 318 U.S. 724, at page 734, 63 S.Ct. 930, 87 L.Ed. 1107.

The testimony as a whole is to the effect above stated, that no cables were lying about on the deck of the BIBB when Finnigan went ashore, and that he was not limping when he entered the first barroom, in Hoboken, from which I conclude that the narrative upon which he relies to establish both causes, is not in accord with the credible evidence, and the libel must be dismissed on the authority of Barlow v. Pan Atlantic S. S. Corporation, 2 Cir., 101 F.2d 697, cited in Aguilar v. Standard Oil Co., supra, at page 731, 63 S.Ct. 930, 87 L.Ed. 1107, and Kable v. United States, 2 Cir., 169 F.2d 90, at page 93.

Findings are filed herewith,

Settle decree.