**Juan FUENTES, Libellant,**

v.

**PANAMA CANAL COMPANY,**
**Respondent.**

United States District Court
S. D. New York.

Nov. 20, 1956.

Murray A. Miller, New York City, for libellant.

Thomas J. Maginnis, New York City, for respondent. Arthur P. Loughran, New York City, Advocate.

LEVET, District Judge.

This is a libel action by Juan Fuentes against the Panama Canal Company under the provisions of the Jones Act, 46 U.S.C.A. § 688 and the General Maritime Law for the recovery of maintenance and cure.

Libellant was employed as a wiper on the S.S. Ancon, owned and operated by the Panama Canal Company. His term of employment was from October 10, 1955, to the time the vessel, bound for the Canal Zone, returned to the City of New York. The employment was subject to the terms of a contract between the respondent and others on the one hand and the National Maritime Union on the other, which in Section 6 thereof contained the following provisions:

"§ 6. *Maintenance and cure benefits.*

"(a) Crew members who are entitled to maintenance under the General Maritime Law Doctrine of wages and maintenance and cure on account of injury or illness incurred in the service of the ship shall be paid maintenance at the rate of $8.00 per day, with payments to be made once weekly.

"Wages, maintenance and cure, under such doctrine, shall not be withheld in any case merely because

the claimant has also submitted a claim for damages or has filed suit for or has taken steps toward that end."

The S.S. Ancon sailed from New York on October 13, 1955, and arrived at Cristobal, Panama Canal Zone, on October 19, 1955. While there, libellant was on leave at least from day to day, and apparently returned to the ship each night.

On October 22, 1955, libellant returned to the S.S. Ancon at about 1:00 P.M. According to one Beverly Ricker, Senior Third Officer of the ship, libellant appeared to be coming out of a "terrific drunk," his eyes were glassy, he was swaying and seemed to be in a stupor. It also appears that at about 3:00 P.M. the same day, libellant attempted to commit suicide by throwing himself over the side of the ship.

The Corozal Hospital record also shows that because of libellant's behavior and evidence of certain auditory hallucinations, he was taken off the ship at Cristobal on October 22, 1955. After first being taken to the Gorgas Hospital, where he attempted to jump out of the window, he was transferred on the same day to the Corozal Hospital, with the diagnosis of acute schizophrenic reaction. Libellant was admitted to a mental ward. He was discharged on November 4, 1955 and placed on the respondent's S.S. Cristobal to return to New York. Upon his arrival in New York on November 10, 1955, he was admitted to the Public Health Service Hospital on Staten Island and remained there until November 15, 1955. The final diagnosis there was schizophrenic reaction, acute undifferentiated type. The disposition entered on November 15 was as follows:

"The patient was discharged from the hospital 11/15/55, as unfit for duty, from a psychiatric point of view. His seaman's papers were removed by the Coast Guard during hospitalization, and patient was advised to contact the hospital after about six months time in connection with re-evaluation for a fitness for duty certificate."

Libellant was examined by a physician for the respondent before employment and was in effect marked fit for duty. Libellant, however, failed to reveal that he had been in the Bellevue Hospital from August 20, 1955 to August 29, 1955, or that he had been hospitalized at the Public Health Service Hospital on Staten Island during the period from August 29, 1955 to September 22, 1955. Although while at the Public Health Service Hospital libellant had been operated on for appendicitis, the diagnosis was the same as that in the later hospitalizations, to wit, schizophrenic reaction, acute undifferentiated type. However, at the time he was discharged by the hospital on September 22, 1955, he was marked "Fit for duty."

No proof was submitted with respect to any unpaid wages and consequently the respondent's motion to dismiss this portion of the claim was granted.

The remaining claim is for maintenance and cure at the rate of $8 per day, as appears by the aforementioned union agreement, for a period from November 15, 1955, the date of hospital discharge, to June 1, 1956, when libellant was certified fit for duty. Libellant admitted that in January 1956 he believed himself capable of working and that he appeared at the Coast Guard, which had lifted his papers, as hereinabove shown; that the Coast Guard said he must secure a certificate of fitness.

There was no proof of expenditures of any sums for medical attention or psychiatric treatment of any kind.

The general nature and character of the right of maintenance and cure has been stated in Smith v. Lykes Brothers-Ripley S.S. Co., 5 Cir., 1939, 105 F.2d 604, certiorari denied 308 U.S. 604, 60 S.Ct. 141, 84 L.Ed. 505, as follows:

"The duty to provide maintenance and cure for a seaman falling sick or injured in the service of his ship is an obligation in addition to mere wages and keep during the term of employment. It is an incident to the contract of service, may extend beyond the termination of the voyage,

includes care, nursing, and medical attention, and rests upon the seaman's need, not upon the negligence or culpability of anyone." 105 F.2d at page 605.

■■ The respondent contends that the libellant held himself out as fit for duty when, in fact, this was not true, and that, therefore, he cannot recover maintenance and cure. The rule stated in Ahmed v. United States, 2 Cir., 1949, 177 F.2d 898, is:

"* * * a seaman who believes himself fit for duty and signs on without any fraudulent concealment, is entitled to maintenance and cure, notwithstanding a previous condition of ill health. Neilson v. The Laura, 17 Fed.Cas. page 1305, No. 10,092. When a shipowner undertakes by a physician's examination to satisfy himself as to the fitness of a prospective member of the crew, we think that such examination should be proof of the seaman's condition unless he conceals something which he knows to be relevant or which he can reasonably be charged with so knowing." at pages 899–900.

In Lindquist v. Dilkes, 3 Cir., 1941, 127 F.2d 21, the Court stated:

"* * * the sailor's duty is to disclose whatever he as an ordinarily prudent person should have known is material to the risk." at page 24.

In Hazelton v. Luckenbach S.S. Co., Inc., D.C.Mass., 1955, 134 F.Supp. 525, District Judge Bailey Aldrich, after stating the general rule, added:

"The measure of this obligation is subjective, and it might properly be found that a seaman who had been discharged from the hospital as fit was not sufficiently aware of the extent of his disease to call into play a duty of spontaneous disclosure." at page 527.

■ In the present case, libellant was discharged from the Public Health Service Hospital on September 22, 1955 as "fit for duty." It is true that there was a diagnosis which included "schizoid personalty with an acute psychotic episode." Actually, however, from libellant's standpoint, the main purpose of the hospitalization was the removal of the appendix. There is no proof in the record that libellant himself, who is not at all skillful in the use of the English language and for whom an interpreter had to be employed at the time of the trial, knew about the diagnosis of schizophrenic reaction, acute undifferentiated type, or knew what it meant. Furthermore, it must be pointed out that the employment for the voyage was for a comparatively short period—that is, from October 10, 1955, to the time of the vessel's return from a round trip to the Panama Canal Zone, which eventually proved to be October 26, 1955. The nature of the allegedly concealed unfitness must also be considered. We conclude that there was no wilful or material misrepresentation.

■ The respondent also argues that the libellant by his allegedly wilful misconduct is not entitled to maintenance and cure. The rule in this respect in this Circuit was set forth in Barlow v. Pan Atlantic S. S. Corporation, 2 Cir., 1939, 101 F.2d 697, as follows:

"* * * The general rule that a vessel and her owner are liable for maintenance and cure, if a seaman falls sick or is wounded in the service of the ship, is subject to a well-recognized exception, dating back to some of the earliest maritime codes, in case his disease or injury arises from his own vices or willful misconduct. See The Osceola, 189 U.S. 158, 169, 23 S.Ct. 483, 47 L.Ed. 760; The Bouker No. 2, 2 Cir., 241 F. 831, 833; The Alector, D.C.E.D.Va., 263 F. 1007." At page 698.

See also Kable v. United States, 2 Cir., 1948, 169 F.2d 90, 93; Sullivan v. United States, 2 Cir., 1949, 179 F.2d 924.

In Aguilar v. Standard Oil Co., 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107, the Supreme Court stated:

"* * * Only some wilful misbehavior or deliberate act of indiscretion suffices to deprive the sea-

man of his protection." 318 U.S. at page 7318, 63 S.Ct. at page 934.

In the said case the Court held that maintenance and cure extended to injuries occurring while the seaman was departing on or returning from shore leave, though he had at the time no duty to perform for the ship. See also Warren v. United States, 1951, 340 U.S. 523, 71 S.Ct. 432, 95 L.Ed. 503.

In the case at bar it does not conclusively appear that the illness from which libellant suffered was due solely to the alleged intoxication, as in such cases as Barlow v. Pan Atlantic S.S. Corporation, 2 Cir., 1939, 101 F.2d 697; Kable v. United States, 2 Cir., 1948, 169 F.2d 90; Victoria v. Luckenbach Steamship Company, Inc., D.C.S.D.N.Y., 1956, 141 F.Supp. 149 or Watson v. Joshua Hendy Corporation, D.C.S.D.N.Y., 1956, 142 F.Supp. 335. Moreover, it does not appear that the libellant was ever advised to refrain from excessive drinking or informed that such conduct might tend to aggravate his mental illness. Therefore, I do not find that the libellant was guilty of wilful misconduct so as to constitute a defense to this action.

The general rule with respect to the length of time for which a seaman is entitled to maintenance and cure, particularly cure, is said must be sufficient to give the injured or ill seaman proper care for a reasonable time during which treatment may be expected to effect cure. See Bradt v. United States, 2 Cir., 1955, 221 F.2d 325; Muruaga v. United States, 2 Cir., 1949, 172 F.2d 318; Skolar v. Lehigh Valley R. Co., 2 Cir., 1932, 60 F.2d 893.

In the Skolar case, supra, the seaman injured his leg, requiring a cast to be affixed, and the Court held that if the cast was not removed before the seaman left the hospital, it was clear that the defendant's duty to provide medical treatment continued at least until it was removed. The Court stated that the shipowner's duty to furnish maintenance is co-extensive in time with his duty to furnish care.

Treatment, it appears to me, may include rest since the discharge from the hospital declared the libellant at that time, at least, that is on November 15, 1955, unfit for duty. On the other hand, libellant has not shown that he was unfit for duty later than January, 1956, the exact date remaining indefinite. Under the disposition stated at the time of discharge, it would appear that at any time libellant might become and be declared fit for duty. He himself concedes that in January, 1956, he deemed himself fit for duty.

Consequently, it is my opinion that libellant is entitled to maintenance and cure for a period from November 15, 1955, the date of discharge from the hospital, to January 15, 1956, at the rate of $8 per day or $488.

Johnson v. United States, 333 U.S. 46, at page 50, 68 S.Ct. 391, at page 394, 92 L.Ed. 468, is not applicable since, as the Court there said, "there is ample evidence to support the findings of the two lower courts that petitioner had incurred no expense or liability for his care and support at the home of his parents." Field v. Waterman S.S. Corp., 5 Cir., 1939, 104 F.2d 849, is also inapplicable. In The Baymead, 9 Cir., 1937, 88 F.2d 144, the seaman was discharged from the hospital September 11, 1934, as "symptomless" but attempted to recover for the forty days thereafter although no medical treatment and care were received. Williams v. United States, 4 Cir., 1955, 228 F.2d 129, certiorari denied 351 U.S. 986, 76 S.Ct. 1054, merely held that a seaman was not entitled to an award for maintenance and cure during a commitment at a state hospital for the insane. In Rofer v. Head & Head, Inc., 5 Cir., 1955, 226 F. 2d 927, the Court allowed the seaman nothing for maintenance when he, having been discharged as unfit for sea duty and to "'be returned to Miami and receive psychiatric care at his own expense'" at page 929, did not secure such care.

### Findings of Fact.

1. Libellant was employed on October 10, 1955, as a wiper on the S.S. Ancon for a voyage from New York to Cristobal, Panama Canal Zone, and return.

2. Subsequent to his arrival in the Port of Cristobal, libellant set upon a course of drinking heavily and on October 22, 1955, libellant, appearing to be in a stupor, attempted to commit suicide.

3. Libellant was hospitalized at the Corozal Hospital and at the Gorgas Hospital in the Panama Canal Zone, where, after he again attempted to commit suicide, his condition was diagnosed as "acute schizophrenic reaction."

4. Libellant returned to New York on respondent's S.S. Cristobal and was admitted to the Public Health Service Hospital on Staten Island, from which he was discharged on November 15, 1955, as unfit for duty by reason of a "schizophrenic reaction, acute undifferentiated type."

5. On September 22, 1955, eighteen days prior to joining respondent's S.S. Ancon, libellant had been discharged from Stapleton Marine Hospital where he underwent an operation for the removal of his appendix and where he had been diagnosed as "schizoid personality with an acute psychotic episode."

6. Libellant's failure to reveal his previous hospitalizations or his aforesaid mental condition when examined by respondent's doctor prior to being signed on the S.S. Ancon was not intentional; there being no evidence that libellant appreciated or knew the significance of such facts with respect to his fitness for duty.

7. Libellant's mental illness manifested itself while in the service of respondent's vessel, the S.S. Ancon.

8. Said mental illness was not due solely to libellant's excessive alcoholic indulgence.

9. There is no evidence that the libellant was ever advised against excessive drinking or told that such drinking might tend to aggravate his mental illness

10. Libellant incurred no expense or liability for medical treatment although his rest and inactivity may be considered as beneficial.

11. There is no evidence that libellant was unfit for duty after on or about January 15, 1956.

12. Libellant was subject to the terms of a contract between respondent and the National Maritime Union which provided that maintenance and cure was to be paid at the rate of $8 per day.

13. Libellant has not been paid for maintenance and cure.

### Conclusions of Law.

1. This Court has jurisdiction of the parties to and the subject matter of this action.

2. Libellant is entitled to recover for maintenance and cure.

3. Said recovery shall be at the rate of $8 per day from November 15, 1955 to January 15, 1956.

4. Libellant may enter a judgment with costs in accordance with the above determination.