ALVA G. TABOR, RESPONDENT, v. THE MIDLAND FLOUR MILLING CO., AND LUMBERMEN'S MUTUAL CASUALTY CO., APPELLANT.—168 S. W. (2d) 458.

Kansas City Court of Appeals. February 1, 1943.

*Paul C. Sprinkle, Wm. F. Knowles* and *Sprinkle & Knowles* for appellants.

*Fred M. Roberts, Edward M. Tracewell* and *Roberts & Tracewell* for respondent.

394

CAVE, J.—This is an appeal from an award by the Workmen's Compensation Commission in favor of the respondent for an accident alleged to have occurred on or about April 22, 1941, while the respondent was in the employ of the Midland Flour Milling Company, one of the appellants. The claimant (respondent) contended in his claim for compensation that a fellow employee grabbed him while he was engaged at his work, and pushed him between a wall and a steam pipe so that he was thereby injured. To this claim the appellants filed their answer in which, among other things, it was denied that the claimant sustained any accidental injury which arose out of and in the course of his employment. It was further alleged in the answer that claimant was not suffering·from any accidental disability and that any injury which he had resulted from "horseplay."

A hearing was held by one of the referees of the Commission, who made an award allowing the claimant compensation. This was reviewed by the entire Commission, which affirmed the award of the

referee and found that the claimant as suffering "from an accidental injury arising out of and in the course of his employment." From the final award by the Commission, the cause was appealed to the Circuit Court of Clay County and that court affirmed the award, and appeal was perfected to this court.

The appellants assign three grounds of error, but in their argument very properly consider all three assignments together because, in effect, they raise but one issue, and that is whether there is substantial evidence to support the findings and award of the Commission. It is conceded that the respondent was employed by Midland Flour Milling Company at their mill in North Kansas City; that his duties consisted of cleaning and tempering wheat, looking after the machines, and cleaning and oiling them. On the day of the incident leading to this controversy, the respondent was on duty at the plant and at that particular time was sweeping dust and dirt in a hallway in which was located a man-lift which extended from the basement to the upper floors and was a power driven belt with steps and hand holds which would permit the employees to hold to in going from one floor to the other. One side of the belt would carry them to the upper floors, while the opposite side would bring them down.

While respondent was sweeping the hallway and within two or three feet of this man-lift, Brant Morris, a fellow employee, stepped on the man-lift and went to one of the upper floors. In a few minutes he returned to the floor where the respondent was working, and without saying anything to the respondent, grabbed him around his arms and body from the back and then followed a good natured scuffle for ten or fifteen seconds. No words were spoken, but respondent admitted it was all in fun. In trying to release himself from Morris' grip, respondent testified, "I got in a twist between the pipes and the wall and in the course of the struggle I hurt my back, and right away I felt like a tearing sensation." This incident occurred about one P. M., and respondent continued his work until his usual quitting time at three P. M. On his way home, he stopped at a toilet and noticed blood in his urine. He suffered considerable discomfort during the night and remained at home for three or four days and then was placed under the care of a physician and has not been able to return to work since. Brant Morris admitted the friendly assault and testified that as he went up the man-lift, the respondent "made a little motion at me as near as I remember," but the respondent said he had no recollection of doing that; however, if it was done, it was in a spirit of good humor. When asked if he was participating in the horseplay, claimant replied, "I was trying to get loose, yes."

The respondent had worked for this employer for approximately 22 years and testified that during that time various employees would engage in horseplay or bantering, such as people on friendly terms will do; but that A. J. Morris, the general superintendent, "would stop it when he caught them at it. I have always noticed him doing

that.'' There was evidence that it was a common practice among the employees, as they went about their work, to engage in sportive acts in various ways which would bring their bodies in contact with each other and that one of the foremen ''was the worst of all.''

Respondent also testified that in 1925 and again in 1936, he had undergone an operation for stones in his bladder; that he had had treatments for prostatic trouble and had noticed blood in his urine probably half a dozen different times prior to this accident. Claimant does not recall violently striking the wall or pipe or any object, and there were no external evidence of bruises or injuries; but in the scuffle he was pushed against the wall and in between the pipe and the wall in a twisted position.

It is now the accepted rule in this State that the award of the Commission is regarded as a special verdict, and, if supported by substantial evidence, it must prevail, and in the absence of such supporting proof, it should be set aside. [Keithley v. Stone & Webster Engineering Co., 49 S. W. (2d) 296, and Reed v. Sensenbaugh, 86 S. W. (2d) 388.] Therefore, is there substantial evidence to support the findings of the Commission in these particulars: ''that employee herein sustained an accidental injury on April 22, 1941, as alleged, which arose out of and in the course of his employment, and which either caused or aggravated certain injuries to his back and body, and he is entitled to compensation for temporary total disability as herein provided.''

It is conceded that the respondent was, and had been for many years, a regular employee of the milling company, and that immediately before Brant Morris placed his hands upon him, he was engaged in performing his duties to the employer. The question is, whether he was embraced by Brant Morris in a friendly spirit and undertook to free himself from that grip, did he step aside from his duties and voluntarily engage in horseplay to such an extent that it can be said as a matter of law that his injuries did not ''arise out of and in the course of his employment?'' We think not. The evidence in this case and the reasonable inferences to be drawn therefrom would authorize the Commission in finding that, at the time of the friendly assault, the respondent was engaged in the performance of his duties for the employer, and that when he was suddenly set upon, without any warning or provocation, he struggled to release himself with the intent of returning to the performance of his duties as an employee, because immediately upon being released he did return to his work without saying anything to Brant Morris or Morris saying anything to him. He was certainly not a voluntary participant in the ''horseplay.'' His struggle to free himself, under the circumstances, was as involuntary as that of closing the eye to avoid dust.

The line of demarcation between sportive acts of employees done independently of and disconnected from the performance of duty and those in a manner connected with the performance of duty is

difficult at times to distinguish, owing to the interweaving of the facts. However, in this case the evidence is conclusive that claimant did not provoke or voluntarily engage in the scuffle. He struggled to release himself and when released he immediately returned to his work without a word being said or doing any act to continue the horseplay. Brant Morris may have stepped aside from his duties to engage in the scuffle, but certainly the claimant did not.

The St. Louis Court of Appeals, in the case of Blaine v. Huttig Sash & Door Co., 105 S. W. (2d) 946, l. c. 953, collects a large number of authorities in this country and lays down this general principal, which we think is well supported by the authorities: "It is well-settled law that injuries sustained by an employee at the hands of a fellow employee through jocular sportive acts, commonly designated horseplay, constitute 'accidents arising out of and in the course of employment' and are, therefore, compensable." To like effect is the ruling of this court in Gilmore v. Ring Construction Co., 227 Mo. App. 1217, 61 S. W. (2d) 764, and Keithly v. Stone & Webster Engineering Co., *supra*. The courts of this country are not uniform in their holdings concerning this question, but we think the conclusion reached here is supported by the weight of authority. Workmen's Compensation statutes are somewhat different in the various states, and each must be construed according to its own language. We are required by statute to give a liberal construction to our Act in order to carry out its purposes, and when we do so, we have no doubt about the Commission being authorized, under the evidence in this case, to make the award it did, and there being substantial evidence to support the award, we must affirm it.

Appellants direct our attention to certain cases in this State, which we have carefully read, and conclude that when they are properly analyzed they support the conclusion we have reached. Such cases are: Hager v. Pulitzer Publishing Co., 17 S. W. (2d) 578; Keithly v. Stone & Webster Engineering Co., *supra*; Gilmore v. Ring Construction Co., *supra*; O'Dell v. Lost Trail, Inc., 100 S. W. (2d) 289, 339 Mo. 1108; Pearce v. Modern Sand & Gravel Co., 99 S. W. (2d) 850. In the Hager case, *supra*, the court announced the rule followed in this State in this language: "Our own court has held that the concensus of authority is to the effect that an injury to an employee arises in the course of his employment when it occurs within the period of his employment at a place where he might reasonably be and while he is reasonably fulfilling the duties of his employment, or engaged in the performance of some task incidental thereto, but that, where, at the time his injury is received, the employee is engaged in a voluntary act, not known to, or accepted by, his employer, and outside of the duties for which he is employed, the injury cannot be said to have been received in the course of his employment; that an injury may be said to arise out of the employment when it is reasonably

apparent upon a consideration of all the facts and circumstances that a causal connection exists between the conditions under which the employee's work is required to be done, and the resulting injury. [Smith v. Levis-Zukoski Merc. Co. (Mo. App.), 14 S. W. (2d) 470, 472]'' The evidence in the instant case brings it within that doctrine.

Appellants concede that the courts uniformly hold that where an injury occurs by reason of conditions approved by the employer, such as permitting horseplay, then the employer is liable. [Conklin v. Public Service Commission, 41 S. W. (2d) 608, 226 Mo. App. 309.] We think there is sufficient evidence in this record to justify the Commission in making its award for that reason, but we need not sustain the award on that ground alone, because it can be, and should be, sustained for the reason above given.

Appellants make contention that the injuries did not arise out of the accident, because the respondent testified that he noticed a ''tearing'' sensation after the horseplay; but the record does not support that contention. He testified ''I got in a twist between the pipes and the wall and *right away I felt like a tearing sensation* . . . '' (Italics ours.)

Appellants also contend that the rule in this State now is to the effect that the mere fact that the employee was injured is not enough to entitle him to compensation under this Act, but in addition thereto there must be proof that the injuries were received in an accidental manner, and cite State ex rel. Hussman-Ligonier Co. v. Hughes (Mo.), 153 S. W. (2d) 40, and Sciortino v. Salia & Co., 157 S. W. (2d) 535. The facts in those cases do not make them applicable to this case. Here, the evidence is conclusive that the respondent was suddenly and unexpectedly attacked, although in a friendly manner, by a much younger man, his arms pinioned to his sides, that he was pushed against the wall and in between the pipes and the wall in a twisted position, and while there was no evidence of any cuts or bruises upon his body, nevertheless while he was being pressed against the wall and pushed in a twisted position between the pipes and the wall, he noticed the ''tearing sensation.'' Certainly, under such facts, it can be said that the injuries resulted from ''an unexpected and unforeseen event happening suddenly and violently with or without human fault and producing at the time objective symptoms of injuries.'' [Sec. 3695 (b), R. S. Mo. 1939.] This conclusion is not in conflict with the holding in the last above cited cases.

Appellants also mention the fact that the respondent had had two operations prior to the date of this accident and had had blood in his urine at different times for several years prior thereto; but there was sufficient evidence in the record to support the conclusion of the Commission that his present injuries and incapacity to labor were the results of the accident and not entirely due to any prior disease or operation.

We conclude that there is substantial evidence to support the award of the Commission and the judgment of the circuit court affirming that award. It therefore follows that the judgment should be affirmed. It is so ordered. All concur.