**Raymond A. PEET, Appellant,**

v.

**GARNER OIL COMPANY, Respondent.**

**No. KCD 26159.**

Missouri Court of Appeals,
Kansas City District.

March 5, 1973.

Ima Goehring, Ida Turner, Goehring & Turner, Kansas City, for appellant.

Morris J. Nunn, Morrison, Hecker, Cozad, Morrison & Curtis, Kansas City, for respondent.

Before PRITCHARD, P. J., SWOFFORD and WASSERSTROM, JJ., and HALL, Special Judge.

SWOFFORD, Judge.

This is an appeal in an action for Workmen's Compensation. The appellant was an employee of the respondent engaged as an attendant in respondent's service station at Richmond, Missouri. He was 17 years of age at the time of his injury. His claim for compensation was denied by the Referee upon the finding that his injury was sustained as a result of his own actions as the aggressor in "horseplay" with a fellow employee. Upon review before the Industrial Commission of Missouri, the referee was reversed and the employee awarded compensation upon the basis that the evidence did not show that the employee

was the aggressor but, at most, he was a voluntary participant in the horseplay and that such horseplay was an incident to the employment. Employer-insurer appealed this award to the Circuit Court of Ray County, Missouri, which court reversed the Commission. Employee appealed to this court.

■ We review the Final Award of the Industrial Commission granting the appellant compensation and not the finding of the referee or the judgment of the court below. Wilhite v. Hurd, Mo.Sup., 411 S.W. 2d 72, 76; Patane v. Stix, Baer & Fuller, Mo.App., 326 S.W.2d 402, 411; Jackson v. McDonnell Aircraft Corp., Mo.App., 426 S.W.2d 669, 675. Our review with reference to the facts, is limited to a determination of whether or not the findings of the Commission are supported by competent and substantial evidence and whether the Commission could reasonably have reached its result upon consideration of all the evidence in the light most favorable to the award. Bone v. Daniel Hamm Drayage Co., Mo.Sup., 449 S.W.2d 169, 171–172; Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S.W.2d 647, 649; Shepard v. Robinson, Mo.Sup., 451 S.W.2d 329, 335; Govreau v. Farmington Transfer Company, Mo.App., 473 S.W.2d 750, 751. A corollary of these rules is that the award of the Industrial Commission must stand unless upon a review of the whole record error of law is shown. Miller v. Lever Brothers Company, Mo.App., 400 S.W.2d 625, 630; Merriman v. Ben Gutman Truck Service, Inc., Mo.Sup., 392 S.W.2d 292, 296–297.

The basic facts in this case, as found by the Commission, are without substantial dispute. Since such facts present a rather unique situation so far as the reported cases in Missouri are concerned, we will direct the thrust of this decision toward the legal effect of such facts. Stated differently, the real matter for our determination is whether or not the injury received during "horseplay" of co-employees under the facts before us constitutes an accident "arising out of and in the course of employment", as found by the Commission.

We hold that from the record before us and the better reasoned authorities, the claimant's injury is compensable and the award of the Commission was proper.

The facts surrounding this accident may be summarized as follows:

The employer operated an APCO Filling Station on Main Street in Richmond, Missouri. The claimant, a 17-year old boy, was an employee engaged as an attendant at said service station. He had worked there for several months, the last three of which were under the supervision of a man by the name of Wayne Eupper.

On June 22, 1968, the claimant was a junior in high school and he reported for duty at the service station at around noon on that day. Another 17-year old boy, David Shelton, was also working as an attendant.

At about 5:00 p. m., Wayne Eupper, the supervisor, left the station in charge of the claimant and Shelton and went to the Bethany Drag Strip and instructed the boys to close the station at 11:00 p. m.

The claimant testified that Eupper frequently left the station for the boys to close up, but that no other supervisor had done so.

At approximately 10:30 p. m., after the claimant had waited on a customer, Shelton threw a sponge at him in the station driveway which caused the claimant to fall over a water bucket. He was not injured in this incident. The claimant picked up another water bucket and chased Shelton toward the station. At the entrance thereof, Shelton, from within the station, closed the door thereof to bar the claimant, who testified, "I tripped over a ledge", raised his arm and his left arm went through a glass panel in the door, resulting in the injuries complained of.

The claimant testified that the boys frequently engaged in "horseplay" and "fool-

ing around" at the station when Eupper was not there. He further recounted an incident where he had complained to his father about a former youthful employee who engaged in horseplay, and that the father had talked to Mr. Eupper about it, and that then Eupper talked to the boys and told them not to engage in horseplay. Shelton has no recollection of this incident.

The claimant was then asked:

"Q. But he (Eupper) was aware that it went on?

A. Yes.

Q. And he still went away in the evenings and left two young boys there in charge?

A. Yes.

Q. Now were you the instigator of this incident, did you start it?

A. No."

Claimant further testified that incident to the closing of the station at 11:00 p. m., he was required to put all moveable objects, including the water buckets, inside the station; lock up the cash inside the station (he had about $100.00 in company money on his person); read the meters on all of the gas pumps; and that these tasks usually took around 20 minutes.

At the time of the incident involved, he and Shelton were the only employees present, but the customer whose automobile he had finished servicing, one Mansell, and some other persons, were on the property but were not involved in the horseplay. The plaintiff testified that his purpose in chasing Shelton was to "get even with him" for throwing the sponge, and further:

"Q. So, your entire purpose in carrying this bucket of water was either to protect yourself against him because he might throw something else at you and to get even with him for throwing the sponge at you already, isn't that right?

A. Yes."

There was no evidence in the record that there was any animus between the boys or any real injurious assault accomplished or intended. The incident was strictly horseplay.

The customer, Mansell, corroborated the plaintiff's version of the incident in substantial detail.

The supervisor, Wayne Eupper, did not testify. The sole witness for the employer was David Shelton, who testified about an incident of "somebody" putting a bug down his back and that he then put a bug down "Peet's back", which incident was followed by the bucket and door occurrence. He had no knowledge of Mr. Eupper's caution against horseplay and denied that he or the "other boys" engaged in horseplay around the station.

The Commission adopted the "Sponge" as opposed to the "Bug" version and found in favor of the employee. The Commission specifically found that Peet sustained an accident at the place and position of his employment upon the property of his employer and within his hours of employment, and that such accident therefore occurred during the "course of his employment".

In ruling the problem of whether or not the accident "arose out of his employment" and after finding the facts as above summarized, the Commission found that the plaintiff was not the aggressor in the incident but a voluntary participant in the horseplay; that the supervisor, Wayne Eupper, had taken no effective measures to insure that his employees did not engage in horseplay during his absence; that he should have reasonably anticipated that they would engage in horseplay, and that his failure to take adequate measures to prevent the same had allowed the horseplay "to become an incident of the employment."

Upon the basis of these conclusions, the Commission awarded appropriate compensation, and we hold that this result was in

accord with the law under the facts of this case.

Since the enactment of workmen's compensation statutes, the courts have been troubled in ruling upon the right to compensation for injuries received as a result of horseplay (sometimes called "sportive assault", "fooling", "practical joking", "larking" or "sky-larking"). In the early decisional law, even an innocent non-participating victim was denied compensation, but this obviously unjust rule was quickly abandoned. In the decisional law on this subject, the defenses of "aggressor", "initiator", "instigator", "participant" and "deviation" received various degrees of response or rejection, but in the gradual evolution of this law, the better reasoned decisions now hold that if the injury is sustained in horseplay which has become an "incident or risk of the employment", it is compensable even for the aggressor or voluntary participant. Larson, Workmen's Compensation, Vol. 1, Sec. 23; Horovitz, Assaults and Horseplay under Workmen's Compensation Laws, 41 Ill.L.Rev. 311; Crilly v. Ballou, 353 Mich. 303, 91 N.W.2d 493 (Talbot Smith, J.); Industrial Commissioner v. McCarthy, 295 N.Y. 443, 68 N.E.2d 434; Meigel v. General Foods Corp., 2 A.D.2d 945, 156 N.Y.S.2d 420; Leonbruno v. Champlain Silk Mills, 229 N.Y. 470, 128 N.E. 711, 13 A.L.R. 522 (Cardozo, J.).[1]

The Missouri authorities are generally in line with this modern trend.

In Hager v. Pulitzer Publishing Co., Mo. App., 17 S.W.2d 578, the employee was carrying a load of newspapers on his shoulder when a fellow employee pushed the load off, fracturing claimant's arm. The claimant then in anger threw a board at the co-employee which resulted in a more severe fracture.

The Commission held that the first incident resulted in a compensable injury, but the second did not, since it was a wrongful act perpetrated in anger and was an isolated incident of which the employer had no knowledge. The St. Louis Court of Appeals affirmed this award.

In Keithley v. Stone and Webster Engineering Corp., 226 Mo.App. 1122, 49 S.W. 2d 296, an employee was held to be entitled to compensation who had been assaulted by a co-employee as a result of a quarrel which arose out of charges that the claimant was not doing his work properly and was a "shirk" or "slacker".

The court held that the employee was engaged in his work for the employer at the place designated, and was therefore "in the course of" his employment, and then said, 1. c. 300:

" * * * The direct and immediate cause of claimant's injury was the assault, but the origin of the assault was a quarrel or controversy growing out of the work of the employees and directly connected with and pertaining to the employment. Claimant's injury arose out of his employment * * *"

There was evidence in the Keithley case that the claimant had struck the first blow.

---

1. In Crilly v. Ballou, Mr. Justice Talbot Smith, speaking for the Supreme Court of Michigan, said:
   "It (horseplay) knows no bounds of occupation or calling, or time, or location, as its very terminology reveals."
   In Industrial Commissioner v. McCarthy, the New York Court of Appeals stated:
   " * * * it was but natural to expect appellant's employees to deport themselves—as boys and young men full of life and health—as they did. Indulgence in a moment's diversion—a moment spent making a friendly pass at a fellow employee—had long been part and parcel, an incident, of the employment. The risks thereby engendered were risks of the employment. * * *"
   In Leonbruno v. Champlain Silk Mills, Mr. Justice Cardozo said:
   "The claimant was injured, not merely while he was in a factory, but because he was in a factory, in touch with associations and conditions inseparable from factory life. The risks of such associations and conditions were risks of the employment."

In Gillmore v. Ring Construction Company, 227 Mo.App. 1217, 61 S.W.2d 764, the claimant and co-employees were standing around a fire at the direction of their supervisor waiting for a change in the weather so that they could proceed with the pouring of cement. There was some banter and repartee regarding union affairs, and a co-employee jostled or shoved the claimant, resulting in his injury.

Compensation was denied by the referee and the Commission. The Circuit Court reversed, which judgment was affirmed. The court said, 1. c. 766:

"Employers whose work require that men wait upon the job for work conditions, ought not to be heard to say that an accident, occurring out of the very conditions presented by the required waiting is not compensatory. *Men standing and waiting around an open fire on a damp December day naturally mill around and talk and even joke and indulge in what might be termed 'horseplay'.*

Where the purpose of the law is to do away with the issue of negligence, accident, assumed risk, contributory negligence, and the like, it follows that the law should be liberally construed.

We conclude, from the undisputed facts in evidence in this case, that as a matter of law it should be held that the accident wherein the complainant was injured arose out of and in the course of his employment. Keithley v. Stone & Webster Engineering Corporation, 226 Mo.App. 1122, 49 S.W.2d 296, and Hager v. Pulitzer Pub. Co., (Mo. App.), 17 S.W.2d 578." (Emphasis supplied)

It should be noted that the Gillmore decision did not hinge upon any consideration of *voluntary* or *involuntary* participation on the part of the claimant.

In the case of Blaine v. Huttig Sash and Door Co., 232 Mo.App. 870, 105 S.W.2d 946, one employee shoved, nudged and tickled plaintiff, causing him to jump and contact machinery and sustain an injury. He filed a compensation claim, which was denied. He then filed a common law action and received a verdict, which was reversed, the court holding that his injury was covered by the compensation law and that his remedy there was exclusive. The court there said, 1. c. 953:

"It is well-settled law that injuries sustained by an employee at the hands of a fellow employee through jocular sportive acts, commonly designated horseplay, constitute 'accidents arising out of and in the course of employment' and are, therefore, compensable * * *" (Citing Gillmore and Keithley and many cases from other jurisdictions)

In the case of Tabor v. Midland Flour Milling Company, 237 Mo.App. 392, 168 S.W.2d 458, the court adopted the general statement in Blaine as quoted above and also cited Gillmore and Keithley, and said, 1. c. 461:

"Appellants concede that the courts uniformly hold that where an injury occurs by reason of conditions approved by the employer, such as permitting horseplay, then the employer is liable * * *" (Citing Conklin v. Kansas City Public Service Company, 226 Mo.App. 309, 41 S.W.2d 608).

■ Viewing the evidence before us in its light most favorable to the claimant, we conclude and hold that there was substantial evidence to support the Commission's finding, that Peet's injuries arose out of and in the course of his employment and as a matter of law were compensable.

Peet had just completed servicing a customer's automobile, was on his employer's premises, was available for attendance to other customers that might appear, was awaiting the commencement of his duties

in closing the station, and thus was in the course of his employment when the horseplay incident arose. The implements of the horseplay, i. e. the sponge and the water bucket, were adjuncts and tools of the employment furnished by the employer.

There was substantial evidence that the claimant, Shelton and other boys working around the station, frequently engaged in horseplay during Eupper's absence and that there was some continuity to this practice, and that at least upon one occasion, the matter had been called to Eupper's attention, and he had requested the boys not to engage in that practice. This warning to stop, however, does not relieve the employer of responsibility. The very fact of the warning or admonition establishes the existence of the practice of horseplay and Eupper's knowledge of it.

The employer also was charged with the knowledge that when two 17-year old boys were left in charge of the station and due to periods of inactivity between customers, horseplay or fooling around was human nature and almost inevitable and, in fact, would become an incident of the employment and a risk or hazard thereof. The record is devoid of any attempt on the part of the employer (other than the admonition upon one occasion) to prevent such risk or hazard.

The fact that Peet may have voluntarily participated in the horseplay with Shelton does not relieve the employer from responsibility for his ensuing injuries.

The judgment of the Circuit Court is therefore reversed and the cause remanded with directions that said court in turn remand the case to the Industrial Commission with directions to reinstate the award in favor of the claimant.

It is so ordered.

All concur.