Mark McMILLIN, Respondent,

v.

PAYLESS CASHWAYS, INC., Appellant.

No. WD 50077.

Missouri Court of Appeals,
Western District.

May 16, 1995.

---

3. Repealed in 1992.

Michael J. Joshi, Kansas City, for appellant.

Michael W. Hanna, Raytown, for respondent.

Before FENNER, C.J., P.J., and BRECKENRIDGE and HANNA, JJ.

HANNA, Judge.

Payless Cashways appeals an adverse decision from the Labor and Industrial Relations Commission (Commission). The Administrative Law Judge (ALJ) and the Commission (a 2–1 decision) found that Mr. McMillin's accident "arose out of" his employment. Mr. McMillin's injury occurred while he and a co-worker were engaged in "horseplay." The issue presented here is whether the accident arose out of his employment. The facts, as stipulated to and as presented to the Commission, are as follows.

On November 9, 1992, claimant McMillin was employed by Payless Cashways as a "load puller." He was storing kitchen cabinets in the upper level of a warehouse with his co-employee, Brian Bender. Claimant was upstairs and Mr. Bender was downstairs. Mr. Bender lifted the cabinets up on a forklift to the claimant, and then he went upstairs and helped the claimant put the cabinets away.

At some point, Mr. Bender was downstairs and called someone within the plant to determine where to put a special order of cabinets. While Mr. Bender was on the phone, the claimant walked over and stood above him with a 16–foot molding and began teasing Bender by swinging it back and forth in front of him. Claimant then used the molding to disconnect the call that Bender was making. Mr. Bender took the molding and shoved it between some doors to prevent the claimant from using it further. Claimant jerked the molding loose and continued to tease Bender with it. Eventually, claimant put the molding down and continued with his work. Approximately a minute to a minute and a half later, Bender threw the molding up at him and struck him in the nose.[1]

---

1. As to when the molding was thrown was subject to some testimonial dispute. Mr. Bender testified that claimant had put the molding down before he threw it. He was examined by the attorneys about his handwritten statement to his employer on the evening of the accident and another one two days following the incident to an adjuster for the employer. Those statements recited that he grabbed the molding from claimant's hand and threw it at the claimant as he ran and hid behind some boxes.

At the time the claimant was hired, he acknowledged receiving copies of the employee handbook and safety manual, which stated that Payless Cashways prohibited horseplay on the job. He testified that the prohibited activities were running, jumping, teasing, wrestling, and fighting and understood that engaging in horseplay could result in disciplinary action, which could include termination.

Mr. Bender also acknowledged that he was aware that he should not engage in horseplay or "mess[ing] around." Mr. Maybry, lumber sales manager for Payless Cashways, testified that all employees who engage in horseplay are disciplined, ranging from a simple warning to termination, depending upon the severity of the case. Both claimant and Mr. Bender were terminated following this incident because they engaged in horseplay.

The claimant received medical treatment to repair the laceration to his nose, and he saw a dentist for some loose teeth. He had $2,158.10 in medical expenses and will incur $2,050.00 in medical expenses for scar revision.

It is the claimant's contention that Mr. Bender had engaged in horseplay prior to the accident date and had been admonished not to engage in such activities. This evidence, claimant argues, reflected Payless Cashways' awareness of Bender's proclivity to engage in horseplay. The Commission's finding was based upon Mr. Bender's testimony. He initially testified that he could not remember being cautioned against "messing around and engaging in that sort of activity before." During his testimony he was referred to a statement he had given to the claims adjuster shortly after the accident and he then testified:

Q. Do you now have a recollection of whether you had been cautioned by Payless Cashways against engaging in that activity?

A. Yeah.

Q. What is that, what is your recollection of that?

A. We had been cautioned not to do it and not to horseplay or mess around or anything.

2. The Commission adopted, by reference, the

Based upon that testimony, the ALJ stated:[2]

Bender admitted on direct examination that he had in fact been warned by Payless Cashways before McMillin's injury about engaging in horseplay. Although not explored in great detail, it is clear that Bender himself had been engaged in horseplay for which he had been reprimanded.

The Commission took Mr. Bender's statement that "We had been cautioned not to do it and not to horseplay or mess around or anything" to mean that Mr. Bender had previously engaged in horseplay for which he had been reprimanded. Because Mr. Bender had previously been reprimanded, the Commission reasoned, Payless Cashways had knowledge of his proclivity for horseplay. Accordingly, this "inference" establishes the employer's knowledge.

Missouri courts have held that an injury arises "out of" the employment:

if (1) the injury results from a natural and reasonable incident of the employment, a rational consequence of some hazard connected therewith or a risk reasonably inherent in the particular conditions of the employment and (2) if the injury is the result of a risk peculiar to the employment or enhanced thereby.

*Crofts v. Harrison,* 772 S.W.2d 901, 903 (Mo. App.1989).

Traditionally, injuries received as a result of horseplay were not considered compensable. *Peet v. Garner Oil Co.,* 492 S.W.2d 103 (Mo.App.1973), was the authority upon which the Commission relied in rendering its decision. The *Peet* court held that horseplay became an incident of the employment and, therefore, a risk or hazard thereof. The employer regularly left two young boys in charge of a gas station unsupervised and alone in spite of the employer's awareness that the boys had frequently engaged in horseplay during the supervisor's absence. *Id.* at 109. There was evidence that the supervisor had been told that the boys continued to engage in horseplay during his absence. Therefore, the court reasoned, be-

ALJ's findings and conclusions.

cause the supervisor left the boys alone without having taken effective measures to insure that they did not engage in this type of activity, horseplay became a hazard of employment. *Id.* at 106.

■ The Commission is the trier of fact and may draw reasonable inferences from the facts that it sees fit to draw. *Snowbarger v. M.F.A.*, 349 S.W.2d 224, 225 (Mo. banc 1961). However, the Commission may not base its findings on conjecture. *Lunn v. Columbian Steel Tank Co.*, 364 Mo. 1241, 275 S.W.2d 298, 301 (1955). The court, in *Williams v. Cavender*, 378 S.W.2d 537 (Mo. 1964), stated:

> For the inference to be legitimate, the circumstances must of course point to the desired conclusion with reasonable certainty; and it is not enough that they may be merely consistent with such a conclusion, or that they may give equal support to inconsistent and contradictory conclusions.

*Id.* at 541.

Mr. Bender admitted that he was cautioned not to engage in horseplay. There was no testimony from either the claimant or Mr. Bender that they had previously engaged in horseplay or that they had been cautioned in response to having engaged in such activities. In light of the testimony, it is more reasonable to infer from Bender's testimony that he learned of Payless Cashways' prohibition against horseplay from Payless Cashways' safety and policy manuals. At least, there was testimony that the employer had a published prohibition against such activities.

■ The Commission has drawn an inference from Mr. Bender's testimony that he had been cautioned against horseplay by Payless Cashways and that, therefore, Payless Cashways had knowledge of continuing and regular horseplay to the extent that it became an incident of employment. This is not a legitimate inference because it does not point to the desired conclusion with reasonable certainty. *Id.* The only evidence supporting the Commission's decision is an inference of knowledge which is drawn from Bender's testimony that he had been cautioned against such activities. We conclude

that there is no evidence to support the Commission's decision that the employee had previously engaged in horseplay or that the employer had knowledge of its employee's proclivity to engage in horseplay.

The decision of the Commission is reversed and the cause remanded for entry of judgment in accordance with this opinion.

All concur.