**David CRUZAN, Respondent,**

v.

**CITY OF PARIS, Appellant.**

**No. 69119.**

Missouri Court of Appeals,
Eastern District,
Division One.

May 28, 1996.

Evans & Dixon, Brian J. Fowler and Michelle M. Dover, Kansas City, for Appellant.

Dempsey, Dempsey and Riggs, P.C., D. Terrell Dempsey, Hannibal, for Respondent.

KAROHL, Acting Presiding Judge.

City of Paris (City), employer, appeals from Labor and Industrial Relations Commission's (Commission) workers' compensation award to employee, David Cruzan. City argues the Commission erred in awarding benefits because the evidence compels a finding Cruzan's accident did not arise out of and in the course of his employment. We affirm.

City employed Cruzan as an electrical lineman. On May 22, 1992, in the Gilmore building, which was owned by City, Cruzan was repairing florescent lights when he fell and was injured. One week before Cruzan's fall, City leased a portion of the Gilmore building to David Chick. City retained part of the building for its use. The only access to the retained area was through the leased portion.

Prior to the accident, Chick asked Cruzan to work on lights in the building. Cruzan and James Hayhurst, Superintendent of City's Electrical Department, both testified that on May 21, Cruzan told Hayhurst he would be working on the lights in the Gilmore building. Cruzan testified he told Hayhurst he would work on the lights some night after work. He also testified he told Hayhurst he would be going to the Gilmore building to get ballasts and bolts he needed to do the work. Both Cruzan and Hayhurst testified Hayhurst did not object to Cruzan's doing the work.

On May 22, when the accident occurred, City continued to store items in the portion of the building not leased to Chick. Items stored by City included a trencher, fire truck, pickup truck, mowing tractor, gas pipe, black coil plastic pipe, water pipe and fittings, meter bases, PVC conduit, and a fiberglass extension ladder. Chick agreed in his lease to maintain all lighting equipment. The lease, however, did not segregate the area leased and used by Chick from the portion retained for City's use.

The portion leased by Chick was lit by a window, measuring two feet by three feet, at each end of the building, and six florescent lights mounted on rafters 16 feet above the floor. Of the six lights, only three were working on May 22. There was testimony City's access route to its storage area was dark. Hayhurst testified it was important to have the lights in the warehouse working. Properly functioning lights benefited City.

On May 22, Cruzan left work at 3:30 p.m. His family picked him up. They drove to Mexico, Missouri, to eat and shop. About 6:30 p.m. they returned to Paris. The whole family went to the Gilmore building to visit with the Chick family. Chick asked Cruzan when he was going to work on the lights. Cruzan went to City's portion of the building to retrieve an extension ladder. The ladder and materials he used were owned by City. Cruzan found a bad ballast, while working on the first light. While working on the second light, the ladder slipped. He fell to the floor sustaining serious injuries. He never made a claim for wages for his work on the light. After his return home

from the hospital, he attempted to contact the City Superintendent. He was unable to reach him. He then contacted the city police department and notified them of the accident.

■ City raises one point on appeal. It claims the Commission erred in its award of compensation to Cruzan because the evidence compels a finding Cruzan's accident did not arise out of and in the course of his employment.

■ Our review of the Commission's award is limited to questions of law. Section 287.495 RSMo 1994; *Saidawi v. Giovanni's Little Place*, 805 S.W.2d 180, 182 (Mo.App. 1990). "We must affirm the Commission's decision if, after a review of the entire record in the light most favorable to the finding, we believe the award is supported by competent and substantial evidence." *Saidawi*, 805 S.W.2d at 182. In making this determination, we must disregard evidence which might support a finding different from that found by the Commission. *Id.* "It is well settled that questions of fact are for the Commission. We may not substitute our judgment on evidence for that of the Commission's, even if the evidence could support a contrary finding." *Id.*

■ Section 287.120.1 provides in pertinent part: "Every employer ... shall be liable to furnish compensation ... for personal injury ... of employee by accident arising out of and in the course of his employment." " 'Arising out of' means that a causal connection exists between the employee's duties and the injury. 'In the course of employment' refers to the time, place and circumstances of the injury." *Stockman v. J.C. Industries*, 854 S.W.2d 24, 26 (Mo.App. W.D.1993). "Every case involving the phrase [arising out of and in the course of employment] should be decided upon its own particular facts and circumstances and not by reference to some formula." *Brenneisen v. Leach's Standard Service Station*, 806 S.W.2d 443, 445 (Mo.App.1993)(*citing Wamhoff v. Wagner Electric Corp.*, 354 Mo. 711, 190 S.W.2d 915, 917 (1945)). "Each case must turn upon the point of whether, under its particular circumstances, the injury arose

from something which had become an incident to the employment." *Hilton v. Pizza Hut,* 892 S.W.2d 625, 631 (Mo.App. W.D. 1994) "Under the mutual benefit doctrine, an injury suffered by an employee while performing an act for the mutual benefit of the employer and the employee is compensable when some advantage to the employer results from the employee's conduct." *Id.* "For the doctrine to apply, the employee must suffer an injury while engaged in activity for the mutual benefit of the employer and employee even if it is the slightest benefit." *Stockman,* 854 S.W.2d at 27.

Here, City retained an access route across the leased premises in the nature of an easement. The access route was dark. It was important to have it lit. City argues, "There was testimony at trial that lights were working throughout the building." The actual testimony is somewhat different. It was:

Q  Are there lights throughout the building?

A  Yes.

&#42; &#42; &#42;

Q  And what was wrong with the lighting at this Gilmore warehouse?

A  There was lights that were out. There was poor lighting.

Q  How many lights were out?

A  Three.

Q  Out of how many?

A  Six.

Lights were not "working throughout the building." Moreover, Cruzan's supervisor testified that properly functioning lighting benefited City. City contends it did not know Cruzan would be at the warehouse on the night of the accident, climbing ladders to fix bulbs. It did not. But, City did know Cruzan would do the work sometime after May 21, 1992, and his supervisor knew he would be going to fix the lights one evening after work. Cruzan's failure to request overtime wages for the lighting repair work was a consideration of fact for the Commission but did not exclude the findings and conclusions the Commission reached.

The Commission's award was supported by competent and substantial evidence that Cruzan was injured while providing a service which benefited City when the accident occurred. The Commission did not err in finding the accident arose out of and in the course Cruzan's employment.

We affirm.

PUDLOWSKI and GRIMM, JJ., concur.