**Francis J. Patrick, Deceased, Employee,**

**Deborah L. PATRICK, Dependent– Appellant,**

v.

**CLARK OIL & REFINING CO., Employer–Respondent,**

and

**National Union Fire Insurance Co., Insurer–Respondent,**

and

**Missouri State Treasurer as Custodian Of The Second Injury Fund, Respondent.**

No. 21804.

Missouri Court of Appeals, Southern District, Division Two.

March 19, 1998.

Application for Transfer Denied April 10 and May 26, 1998.

Patrick J. Platter, Springfield, for appellant.

William F. Ringer, Kansas City, for Employer/Insurer Respondent.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Cara Lee Harris, Asst. Atty. Gen., Springfield, for Missouri State Treasurer.

SHRUM, Judge.

This is a workers' compensation case that presents two questions:

(1) Was the Labor and Industrial Relations Commission (Commission) correct when it ruled that § 287.220.9 [1] (the dual employment statute that implicates the Second Injury Fund) was substantive and not susceptible to retroactive application as Claimant contends?

(2) Did the Commission err when it computed Employee's average weekly wage?

We answer "yes" to both questions. We affirm in part; we reverse and remand in part.

## FACTS

Francis Patrick (Employee) held two employments at the time of his death on August 5, 1993. He had a full-time job as a route salesman for M & M Enterprises. Employee also worked part time for Clark Oil and Refining (Clark) as a convenience store clerk. His job with Clark started on July 22, 1993. Less than two weeks later, on August 5, 1993, at approximately 12:01 a.m., a robber shot and killed Employee while he was at work in Clark's store.

Deborah Patrick (Claimant), the widow of Employee, sought workers' compensation benefits from Clark. She also asserted a claim against the Second Injury Fund (Fund) on the theory that she was entitled to additional death benefits pursuant to § 287.220.9, the dual employment statute.

After an evidentiary hearing, an Administrative Law Judge (ALJ) ruled that § 287.220.9 (which was not effective until August 28, 1993) could not be applied retroactively because it was substantive. Consequently, the ALJ's award did not include benefits from the Fund.

The ALJ found that § 287.250.3 was the "proper section to apply in this situation" and concluded that the proper average weekly wage was $189.38. From that finding, the ALJ ruled that Claimant's weekly compensation amount was $126.25.

Claimant sought Commission review of the ALJ's decision. The Commission affirmed the ALJ's decision that § 287.220.9 was substantive and could not be applied retroactive-

ly to give Claimant benefits from the Fund. However, the Commission ruled that the ALJ was wrong in using § 287.250.3 to determine Employee's "average weekly wage." The Commission found that § 287.250.1(5) applied. It concluded that Clark had agreed to an hourly wage of $4.50. With that as its premise, the Commission computed Claimant's weekly death benefit as $88.49. This appeal followed.

## DISCUSSION AND DECISION

*Point III: Is Dual Employment Statute Substantive or Remedial*

■ Claimant's third point focuses on the dual employment provision of § 287.220.9. Summarized, § 287.220.9 provides that if an employee with two employers sustains a work related injury, "the employer for whom the employee was working when the injury was sustained shall be responsible for wage loss benefits applicable only to the earnings in that employer's employment...." The injured employee could file with the Fund "for any additional wage loss benefits attributed to loss of earnings from the [second] employment ...," but in any event, recovery could not exceed the rate allowed by law on the date of injury.

Claimant concedes that the effective date of § 287.220.9 was August 28, 1993, twenty-three days after Employee was killed. She insists, however, that the Commission erred when it did not award benefits from the Fund via § 287.220.9 as this is a remedial provision that can and should be applied retroactively. We disagree.

In *Stark v. Missouri State Treasurer*, 954 S.W.2d 645 (Mo.App.1997), the western district held that § 287.220.9 is substantive as it creates a new standard for involving Second Injury Fund liability.

" 'The general rule is that statutes are not applied retroactively.' *In re Estate of Wilkinson*, 843 S.W.2d 377, 382 (Mo.App. 1992); Article I, Section 13, Mo. Const. Exceptions to the rule are when the legislature 'shows an intent for retroactive application,' or 'where the statute is pro-

---

1. All statutory references are to RSMo 1994 unless otherwise indicated.

cedural only and does not affect any substantive rights of the parties.' *Wilkinson,* 843 S.W.2d at 382. A substantive law relates to rights and duties giving rise to the cause of action, while procedural statutes supply the machinery used to effect the suit. *Wilkes v. Missouri Highway and Transportation Comm'n,* 762 S.W.2d 27 (Mo.banc 1988); *Fletcher v. Second Injury Fund,* 922 S.W.2d 402, 407–08 (Mo.App.1996)."

. . . .

"As the Administrative Law Judge pointed out, prior to this [1993] amendment [to § 287.220], an injured person had *no claim* against the Fund for second job wage loss benefits. *The amendment did not fine tune an existing right—it created a new cause of action. As such, it is substantive in nature and not susceptible to retroactive application.*" (emphasis supplied).

*Id.* at 647.

This court agrees with the western district. We hold the 1993 amendment that authorized benefits from the Fund for a second employment is substantive rather than remedial. The Commission did not err when it refused to apply § 287.220.9 retroactively and order payment of benefits from the Fund for an accident that occurred August 5, 1993.

In reaching this conclusion, we do not ignore Claimant's argument that the very nature of workers' compensation law is remedial and therefore retroactive. However, this argument overlooks the fact that Missouri courts have frequently held amendments to the Workers' Compensation Act to be substantive. *Stark* is such a case. Other examples are cases holding that the 1993 amendments regarding subrogation, burial expense, and Second Injury Fund thresholds do not apply to injuries occurring before August 28, 1993. *See Liberty Mut. Ins. Co. v. Garffie,* 939 S.W.2d 484 (Mo.App.1997); *Stillwell v. Universal Const. Co.,* 922 S.W.2d 448 (Mo. App.1996).

Claimant's argument also ignores what this court said in *Smart v. Missouri State Treasurer,* 916 S.W.2d 367 (Mo.App.1996): "The 1993 amendment [to § 287.220] is a hodge-podge of words that deal with both procedur-

al and substantive issues." *Id.* at 370. Contrary to Claimant's argument, there is no rule of law to the effect that all workers' compensation amendments are remedial in the sense that they must always be applied retroactively.

Claimant also argues that § 287.220.9 does not concern vested rights of the parties, but only prescribe the method in which the average weekly wage is to be determined. Consequently, Claimant contends this statute must be viewed as remedial and applied retroactively. To support this contention, Claimant cites *Croffoot v. Max German, Inc.,* 857 S.W.2d 435 (Mo.App.1993) (holding that an interest statute, § 287.160.3, applied retroactively), *Leutzinger v. Treasurer,* 895 S.W.2d 591 (Mo.App.1995) (holding that 287.220.1 was remedial), and *Vaughan v. Taft Broadcasting Co.,* 708 S.W.2d 656 (Mo.banc 1986) (holding that statute limiting punitive damages in service letter cases was remedial and applied retroactively). We note § 287.220.9 was not addressed by any of these cases, whereas *Stark* deals directly with this provision. We remain convinced that *Stark* was correctly decided and deny Claimant's Point III.

*Point I: Average Weekly Wage Determination Under § 287.250.1(5)*

The Commission calculated the average weekly wage pursuant to § 287.250.1 and subparagraph (5) thereof. It reads:

"1. Except as otherwise provided for in this chapter, the method of computing an injured employee's average weekly earnings which will serve as the basis for compensation provided for in this chapter shall be as follows:

. . . .

(5) If the employee has been employed less than two calendar weeks immediately preceding the injury, the employee's weekly wage shall be considered to be *equivalent to the average weekly wage prevailing in the same or similar employment at the time of the injury,* except <u>if the employer has agreed to a certain hourly wage, then the hourly wage agreed upon multiplied by the number of weekly hours scheduled</u>

shall be the employee's average weekly wage." (emphasis supplied).

■ Claimant agrees that the Commission properly relied on § 287.250.1(5) in setting Employee's average weekly wage, but insists that the Commission erred when it applied the exception (underlined above) rather than the general rule (italicized above). She argues that there was not sufficient competent evidence in the record to warrant the trial court's finding that Clark agreed to pay Employee $4.50 per hour. Accordingly, Claimant insists we should remand with directions to the Commission so it can determine Employee's average weekly wage from the evidence already in the record concerning the prevailing wage of same or similar employment.

The following is the Commission's explanation of how it arrived at Employee's average weekly wage.

"The deceased employee began work for Clark ... on July 22, 1993.... He worked nine days, 59 hours, and ... had worked less than two full calendar weeks 'immediately preceding' his death.... *The claimant's own exhibits indicate that the [Employee] and [Clark] had agreed on an hourly wage of $4.50. ($265.00 ÷ 59 hours).* ... Based on the days [Employee] actually performed work, his average work week was 29.5 hours. Multiplied by his hourly wage of $4.50, the deceased's average weekly wage was $132.75." (emphasis supplied).

The exhibits referred to by the Commission consisted of a calendar book record kept by Employee (Exhibit "A") and the W–2 form issued by Clark reporting wages it paid to Employee (Exhibit "C").

Claimant identified Exhibit "A" as a calendar book in which Employee wrote down information about his work. For example, it recorded mileage, sales figures, and vehicle maintenance information relating to his route sales job with M & M. Also, once Employee started working for Clark he recorded the "[t]ime he was supposed to work at Clark each day." For example, Exhibit "A" contained the following entry on August 1, 1993: "Clark 2:00–10:30." However, Employee put nothing in the calendar book about his wage

amounts or wage rates with Clark. Moreover, Exhibit "A" appears to be a record of when Employee was scheduled to work, not necessarily when he worked. This is demonstrated by entries concerning Employee's work schedule with Clark for the three-day period after Employee was killed. Thus, for August 6 there is written "Clark: 5:30–12:30[;]" for August 7, "Clark 3:00–12:30[;]" and on August 8, "2:00–10:30."

As to Exhibit "C" (W–2 form), it reported Employee's earnings with Clark as $265.50. Being in the usual form, this W–2 revealed nothing about Employee's wage rate or terms of employment.

The Commission took Employee's work schedule and W–2 information to mean that Clark had agreed to compensate Employee on an hourly basis. Because Employee was scheduled to work 59 hours, the Commission reasoned that it could divide the number of hours scheduled into the compensation paid to arrive at an hourly rate. Accordingly, the Commission utilized this "inference" to establish that Clark agreed to pay Employee $4.50 per hour. We cannot agree that this is an inference that the evidence supports with reasonable certainty.

"The Commission is the trier of fact and may draw reasonable inferences from the facts that it sees fit to draw. *Snowbarger v. M.F.A.,* 349 S.W.2d 224, 225 (Mo.banc 1961). However, the Commission may not base its findings on conjecture. *Lunn v. Columbian Steel Tank Co.,* 364 Mo. 1241, 275 S.W.2d 298, 301 (1955). The court, in *Williams v. Cavender,* 378 S.W.2d 537 (Mo.1964) stated:

'For the inference to be legitimate the circumstances must of course point to the desired conclusion with reasonable certainty; and it is not enough that they may be merely consistent with such a conclusion, or that they may give equal support to inconsistent and contradictory conclusions.' *Id.* at 541."

*McMillin v. Payless Cashways,* 897 S.W.2d 661, 664[1,2] (Mo.App.1995).

The inference drawn by the Commission from Exhibits "A" and "C," i.e., that Clark agreed to pay Employee an hourly wage of

$4.50, is not legitimate. This follows because the circumstances do not point to the desired conclusion with reasonable certainty. *See McMillin,* 897 S.W.2d at 664. Nothing in the evidence demonstrates that Employee actually worked 59 hours. Clark tendered no time sheets or other records showing the actual hours worked by Employee. Exhibit "A" only contained a record of when Employee was scheduled to work, not when he actually worked. Moreover, Clark did not adduce any evidence about the agreed rate of pay.[2]

Although the circumstances revealed by Exhibits "A" and "C" might be consistent with the conclusion drawn by the Commission, that is not enough. *Id.* Exhibits "A" and "C" would equally support the conclusion that Clark agreed to pay Employee by the day, week, or month. We conclude there is no evidence to support the Commission's decision that Clark had agreed to pay Employee $4.50 per hour. Without any evidence of an agreed hourly rate, § 287.250.1(5) mandates that Employee's average weekly wage be computed based on the average weekly wage prevailing for convenience store employees as of August 5, 1993.

At the evidentiary hearing before the ALJ, Claimant offered evidence from two witnesses concerning the average weekly wage prevailing for convenience store workers. Additionally, there was substantial evidence that the average weekly wage prevailing at the time would have been at least $189.38 based on Clark's calculations.

Upon remand, the Commission shall determine Employee's average weekly wage based upon the prevailing wage evidence in the record.

In light of our holding in regard to Point I, we need not address Point II. The portion of the Commission's award setting Claimant's death benefit at $88.49 per week is reversed and the cause remanded for determination of

Claimant's death benefit in accordance with this opinion. In all other respects, the Commission's award is affirmed.

PARRISH, P.J., and BARNEY, J., concur.

---

**2.** The only evidence adduced by Clark was a document that apparently is a computation of Employee's average weekly wage at $189.38 under § 287.250.3. We say "apparently" because the document, marked as Clark's Exhibit "1," was offered and received by the ALJ without any explanation or identification. The exhibit itself contains no explanation about the source or meaning of the calculations contained therein. We note, however, that Clark urged both the ALJ and Commission to compute Employee's average weekly wage according to § 287.250.3. Moreover, before trial, Clark voluntarily paid Claimant's death benefits based upon an average weekly wage of $189.38.