**Joseph WISELY, Respondent,**

v.

**SYSCO FOODS, Appellant.**

No. 72829.

Missouri Court of Appeals,
Eastern District,
Division Five.

March 31, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 27, 1998.

Application for Transfer Denied
Aug. 25, 1998.

---

J. Bradley Young, Roberts, Perryman, Bomkamp & Meives, P.C., St. Louis, for appellant.

Nicholas B. Carter, Reinert & Duree, P.C., St. Louis, for respondent.

RICHARD B. TEITELMAN, Judge.

Sysco Foods (Employer) appeals from an award entered by the Labor and Industrial Relations Commission (Commission) providing for workers' compensation benefits for Joseph Wisely (Claimant). The Commission determined that Claimant's injury resulted from an accident arising out of and in the course and scope of his employment as required by Section 287.120 RSMo 1994. Employer claims the Commission erred because the evidence shows Claimant was injured while engaging in horseplay. We affirm.

Claimant worked as a fork lift/pallet jack operator and his duties consisted of moving pallets of food products from the warehouse to the dock area and loading them onto waiting trucks for distribution. On March 21, 1996, Claimant was operating a double pallet jack traveling behind a co-employee, Jack Denouden, who was operating a picker. A picker is similar to a forklift, except the forks of the picker are in the back of the equipment. Claimant stated that he observed an empty pallet sliding off Denouden's picker and he kicked the pallet back on the forks. Denouden stopped suddenly by removing his foot from the deadman switch, causing the brakes to screech. Claimant was unable to stop and a collision occurred, injuring Claimant's leg. Denouden testified that he stopped so quickly because he heard his pallet fall off his picker. As he turned around to see what had occurred, he removed his foot from the deadman switch, causing the picker to come to a sudden stop.

After the investigation, Employer concluded the injury was due to horseplay and that claimant had removed and dropped Denouden's pallet as a prank. The sound of the pallet hitting the ground had caused Denouden to stop suddenly, causing the accident. At the hearing Denouden testified that he believed Claimant had pulled the pallet off the picker as a practical joke. He stated that this was a commonly known practical joke in his business. Denouden stated that he had personally pulled empty pallets off of pallet jacks as a practical joke and had seen others do it as well. He cited other types of horseplay at the warehouse, such as chasing co-workers with pallet jacks, kicking wood in front of moving vehicles, and stopping short to scare someone following. He said he had personally engaged in these acts of horseplay. He further testified that acts of horseplay were not an unusual occurrence and in fact were fairly common at Employer's warehouse.

Robert Mooney, director of Human Resources for Employer, testified that Employer had a zero tolerance for horseplay activities at work. However, in his 27 years of experience working in a warehouse, he admitted horseplay was present. He said he was unaware of any prior act of horseplay by Claimant or a tendency on Claimant's part to engage in horseplay.

The Administrative Law Judge (ALJ) found that Claimant had suffered the injury to his left leg as a result of engaging in a practical joke, or act of horseplay, of pulling

the empty pallet off of Denouden's picker. Even so, the ALJ found that horseplay was so pervasive at the warehouse, it had become a regular incident of employment there and thus, Claimant was injured in the course of his employment with Employer. Employer appealed to the Commission, who affirmed the ALJ's award and adopted her findings of fact and conclusions of law. Employer now appeals to this court.

▮ In its point on appeal, Employer contends the Commission erred in awarding benefits because no evidence was presented regarding Employer's knowledge of Claimant's proclivity to engage in horseplay.

▮ The scope of appellate review of a Commission decision is set forth in Section 287.495 RSMo 1994, as follows:

The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

In reviewing the evidence, the Court of Appeals disregards evidence which might support a finding different from that of the Commission. *Cruzan v. City of Paris*, 922 S.W.2d 473, 475 (Mo.App. E.D.1996). In addition, we review the evidence in the light most favorable to the Commission's ruling. *Bergmeyer v. Queen's Supermarkets*, 878 S.W.2d 60, 61 (Mo.App. E.D.1994).

Traditionally, Missouri courts generally provided that injuries sustained during horseplay were not compensable. *Peet v. Garner Oil Co.*, 492 S.W.2d 103, 107 (Mo. App.1973). However, in *Peet*, the Kansas City District of the Missouri Court of Appeals affirmed the Commission's award of workers' compensation benefits to a 17-year-old employee, Peet, who was injured as a voluntary participant in horseplay. *Id.* at 109. Peet worked as an attendant at the employer's service station. One evening the supervisor left him and another boy, Shelton, to close the station. Shelton threw a sponge at Peet, causing Peet to fall over a water bucket. Peet was not injured in the fall, but chased Shelton with the water bucket toward the entrance to the station. At the entrance, Shelton closed the glass door. Peet tripped over a ledge and his left arm went through a glass panel in the door, resulting in injuries.

In sustaining the award of benefits, the appellate court found "if the injury is sustained in horseplay which has become an 'incident or risk of the employment,' it is compensable even for the aggressor or voluntary participant." *Id.* at 107. In doing so, the appellate court apparently adopted the so-called "New York" rule, based on the New York case, *Industrial Commissioner v. McCarthy*, 295 N.Y. 443, 68 N.E.2d 434 (1946).

In finding that horseplay was an incident to employment, the Court noted substantial evidence of frequent horseplay by Peet and other boys working at the station with some continuity in practice. *Peet*, at 109. The Court further stated that the supervisor's warning to stop horseplay established the existence of horseplay and the supervisor's knowledge of it. *Id.* Moreover, the Court said:

The employer also was charged with the knowledge that when two 17-year old boys were left in charge of the station and due to periods of inactivity between customers, horseplay or fooling around was human nature and almost inevitable and, in fact, would become an incident of the employment or a risk or hazard thereof.

*Id.*

After *Peet*, the Southern District of the Missouri Court of Appeals affirmed another award of workers' compensation benefits to an employee injured as a result of horseplay. *Pullum v. Hudson Foods, Inc.*, 871 S.W.2d 94, 98 (Mo.App. S.D.1994). In that case, Pullum and several other employees were trimming chickens with poultry scissors. The chickens were packed in boxes of ice. One employee, Ibeck, threw ice at Pullum,

striking her. Pullum then put ice on the arm of a third employee, Nations. However, the ice scared Nations and she threw up her right hand and her poultry scissors went through Pullum's left arm, severing a nerve.

The Court found the evidence supported a finding that the injury occurred in the course of employment where Pullum was fulfilling her duties of employment when the horseplay started and "[s]he deviated from her duties by conduct which her employer knew had been occurring and which the employer could reasonably anticipate." *Id.* at 98. Pullum had worked with her employer for three years, and she had seen every worker throw fat, ice, and guts; even the bosses put ice on people.

Employer contends benefits could only be awarded if Claimant himself tended to engage in horseplay before the incident in question and Employer knew about it. To support its argument, Employer relies upon *McMillin v. Payless Cashways, Inc.*, 897 S.W.2d 661 (Mo.App. W.D.1995). In that case, McMillin was injured in a joint act of horseplay with another employee, Bender. The Western District reversed the Commission's award of workers' compensation benefits, finding no evidence to support the Commission's decision that Bender had previously engaged in horseplay for which he had been reprimanded and the employer had knowledge of Bender's proclivity to engage in horseplay. *Id.* at 664.

We disagree with Employer's contention. In *McMillin*, no issue was ever raised of the employer's constructive knowledge due to the pervasiveness of horseplay at the place of employment. Instead, McMillin had contended his co-employee Bender had engaged in horseplay prior to the accident and the employer had actual knowledge of it. *Id.* at 663. *McMillin* does not stand for the proposition expounded by Employer that Claimant himself must have a proclivity for horseplay of which Employer was aware.

Moreover, in discussing the "New York" rule, Larson indicates that the knowledge of the employer is an "element alien to the real reason for the rule" and the controlling issue is whether the custom had in fact become part of the employment. 2 Arthur Larson,

*Larson's Workers' Compensation Law* sec. 23.42 (1997). Larson indicates that the employer's knowledge of the horseplay is at most evidence of the incorporation of horseplay into the employment. *Id.* sec. 23.42 at 5–204. Larson further maintains:

> In spite of this occasional reference to "knowledge," a careful reading of the *McCarthy* and *Ognibene* cases seems to indicate that continued practice of such an extent and duration as to give rise to constructive knowledge is the test intended. Actually in most situations it would make little difference whether one looked for constructive knowledge or held knowledge immaterial, since almost any practice which had continued long enough to qualify as "custom" and as "part and parcel" of the employment could be found to be within the constructive knowledge of the employer. But to require actual knowledge and acquiescence would be to import into the coverage test the kind of personal elements—personal knowledge, personal acquiescence, personal failure to prevent recurrence—that have no place in compensation law.

*Id.*

The case at hand is more akin to *Pullum*, where the acts of horseplay by all employees were so pervasive that Pullum's act was not a substantial deviation from the course of her employment. *Pullum*, 871 S.W.2d at 98. Therefore, the issue presented is whether the horseplay was of such continued practice in the particular employment that the horseplay became part of the employment, so that while engaging in horseplay, Claimant had not deviated from his employment.

We find sufficient competent evidence in the record to support the Commission's award. Denouden testified to the prevalence of horseplay in the warehouse, describing various kinds, and stating horseplay was usual and common. He stated that pulling an empty pallet off of someone's machine was a known practical joke and that he had personally done it and had seen and heard of other employees doing it. He testified that the pulling of a pallet off the forks would not have been an unusual event prior to March

21, 1996. While not approved of by the management, sufficient competent evidence supports a finding that horseplay, including pulling the pallets off of forks, did occur as a regular incident of Claimant's employment.

The award is affirmed.

CRAHAN, J., and ROBERT E. CRIST, Senior Judge, concur.